COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

22 CV 09611

JUDGE ROCHON

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA; the STATES of CALIFORNIA, FLORIDA, and NEW YORK,<br><br>*ex rel.* JUDITH SILVER,<br><br>        *Plaintiffs,*<br><br>   v.<br><br>DocuSign, Inc.,<br><br>        *Defendant.* | C.A. No. _____<br><br>***FILED IN CAMERA AND UNDER SEAL***<br><br>**COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACT**<br><br>**DEMAND FOR JURY**<br><br>**DO NO ENTER ON PACER<br>DO NOT PLACE IN PRESS BOX**<br><br>**FILED UNDER SEAL AS REQUIRED BY 31 U.S.C. § 3730(b)(2)** |

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

**Table of Contents**

PRELIMINARY STATEMENT ........................................................................................ 1
PARTIES ........................................................................................................................... 6
JURISDICTION AND VENUE ......................................................................................... 7
LEGAL BACKGROUND .................................................................................................. 8
   I.    The False Claims Act ............................................................................................ 8
   II.   Regulatory Framework Governing Electronic Signatures .................................. 10
     A.    United States .................................................................................................... 10
       1.    UETA ........................................................................................................ 10
       2.    ESIGN Act ............................................................................................... 12
       3.    OMB Electronic Signature Guidance ...................................................... 13
       4.    Part 11 Regulations .................................................................................. 16
       5.    21st Century Integrated Digital Experience ("IDEA") Act ..................... 17
     B.    European Union eIDAS ................................................................................... 18
GENERAL ALLEGATIONS ............................................................................................ 19
   III.   Background ......................................................................................................... 19
     A.    Defendant's eSignature Product ...................................................................... 19
       1.    Overview .................................................................................................. 19
       2.    Marketing, Sales, and Customer Base ..................................................... 20
       3.    Government Contracts .............................................................................. 21
     B.    Defendant's Representations about eSignature Product Security ................... 73
       1.    General Representations that the eSignature Product is Secure ............... 74
       2.    Specific Representations that the eSignature Product Complies with Security
Standards ......................................................................................................................... 76
   IV.   Critical Security Flaws in the eSignature Product: Walkthrough of the Security Exploit
      78
       1.    Scenario 1: Signatures Acquired Sequentially ........................................ 81
       2.    Scenario 2: Signatures Acquired in Parallel ........................................... 113
   V.   Defendant's FCA Violations ............................................................................. 129
     A.    Falsity: Defendant's Misrepresentations about eSignature Product Security .......... 129
       1.    General ..................................................................................................... 129
       2.    UETA ...................................................................................................... 130
       3.    ESIGN Act ............................................................................................. 131
       4.    Part 11 Regulations ................................................................................ 132
       5.    EU eIDAS ............................................................................................... 133
     B.    Knowledge: Defendant's Misrepresentations are Knowing .......................... 134
     C.    Materiality and Payment: Defendant's Misrepresentations Materially Influence the
Government's Decision to Pay ........................................................................................ 138
     D.    FCA Liability .................................................................................................. 140
COUNT I (Federal False Claims Act) ............................................................................. 143
COUNT II (California False Claims Act) ........................................................................ 143
COUNT III (Florida False Claims Act) ........................................................................... 144
COUNT IV (New York False Claims Act) ...................................................................... 145
PRAYER FOR RELIEF .................................................................................................. 146
JURY DEMAND .............................................................................................................. 147

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Plaintiff Judith Silver (the "Relator") brings this *qui tam* action on behalf of the United States of America against DocuSign, Inc. ("DocuSign" or the "Defendant") under the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3733. This action is also brought on behalf of the States of California, Florida, and New York (collectively, "State Plaintiffs") under their respective State FCAs or similarly named/equivalent statutes (collectively, "State Plaintiff FCAs"). The Relator alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action to recover all available damages, civil penalties, and other relief on behalf of the United States of America and the State Plaintiffs (collectively, the Federal and State Plaintiffs are referred to as the "Government" or the "Government Plaintiffs") arising from false or fraudulent statements, records, and claims made, presented, or caused to be made or presented by Defendant[1] to the Government[2] in violation of the Federal FCA and the State Plaintiff FCAs (collectively, the "FCA").[3]

2.      Defendant sold, and continues to sell, to hundreds of Government customers subscriptions for the use of an electronic signature software product (the "eSignature Product")[4] and related products and services, despite having actual knowledge or being deliberately or recklessly ignorant that the product contains critical and undisclosed security flaws that render it

---

[1] References to "Defendant" in this Complaint include Defendant's agents, employees, and/or co-conspirators.

[2] References to the "Government" in this Complaint include the Government's officers, employees, and/or agents.

[3] Citations to Federal FCA provisions in this Complaint include references to counterpart State Plaintiff FCA provisions, unless otherwise specified.

[4] References to the "eSignature" product in this Complaint include the "eSignature for U.S. Government" product, unless otherwise specified.

defective and/or non-compliant with material contract terms (express or implied) and external requirements and standards.

3. Specifically, Relator uncovered a security "exploit" that allows an individual (who may be the originator and/or a signer of a document) to modify the terms of a document being executed through the eSignature Product—using nothing but basic and widely available document conversion and editing tools—*after* one or more parties to the document has already signed it and *without* the knowledge or consent of those part(ies), while also preserving the image(s) associated with the electronic signature(s) of those part(ies), such that the signatures on the final, modified document appear valid to the average reviewer despite the fact that they were included in the final, modified document without the knowledge or consent of the purported signator(ies) (the "Security Exploit").

4. A critical aspect of the Security Exploit, and a core security flaw with the eSignature Product, is the ability to upload to the eSignature Product a document with one or more pre-existing electronic signature images, and to request additional signatures from other part(ies), without any security warning or flag from the eSignature Product that the pre-existing signature image(s) may have been generated in connection with a different version of the document.

5. The eSignature Product creates a document-specific Envelope ID number for each document uploaded to the eSignature Product. The eSignature Product does not, however, incorporate a unique identifier, such as the document-specific Envelope ID number, into the electronic signature image(s) that make each signature image unique for each document and would associate each signature image with a specific version of a document.

6.      Moreover, the security banner that appears on final, signed documents will state that "All signatures are valid," even if one or more signature image(s) was generated in connection with a different version of the document.

7.      There is no ability within the audit trail of the final document to determine when, or in connection with which version of the document, any pre-existing signature image(s) were generated, or to determine what terms within the document were modified between the different document versions.

8.      Another core security flaw with the eSignature Product is that it generates a non-secured PDF for users who choose to download a copy of a document from the eSignature platform in PDF form to review the document locally. These non-secured PDFs can be readily edited to utilize the Security Exploit by anyone with basic computer literacy. As an alternative, the eSignature Product could generate documents in a format, such as a secured PDF or a graphic file (*e.g.*, jpg), that would be more protected against editing by an average user.

9.      The Security Exploit is also not prevented by any signer authentication requirements, which would only apply *before* an original signature is applied to a document.

10.      The eSignature Product does not prevent the unauthorized alternation of a previously signed document or misuse of a previously applied electronic signature image.

11.      Effectively, the Security Exploit enables parties to forge electronic signatures on documents and to rewrite ostensibly finalized documents after they have been signed.

12.      The Security Exploit disrupts any link, attachment, or logical association between a document, the date(s) it was signed, the electronic signature images, and the identities and intent of the signing parties.

13. On information and belief, Defendant has made and continues to make representations to Government customers and potential customers about the security of the eSignature Product, including: (1) general representations (explicit or implicit) that the eSignature Product is secure, including that it is more secure than traditional paper records and handwritten signatures; and (2) specific representations (explicit or implicit) that the eSignature Product complies with statutory and regulatory requirements and standards for electronic record and electronic signature security, including: the Uniform Electronic Transactions Act (the "UETA"); the Electronic Signatures in Global and National Commerce Act (the "ESIGN Act"); the U.S. Life Sciences Regulations under 21 C.F.R. Part 11 (the "Part 11 Regulations"); and the European Union Regulation No. 910/2014 on "electronic Identification, Authentication, and trust Services" (the "eIDAS") for electronic transactions in the internal market (collectively, the "Security Standards").

14. On information and belief, such representations (explicit or implicit) are made in contract or agreement terms (express or implied) between Defendant and the Government; advertising, promotional, and informational materials targeted toward Government customers or potential customers; filings and submissions to Government agencies; and other statements or records.

15. On information and belief, such representations are material to the Government's decision to make payments to Defendant for use of the eSignature Product and related products and services.

16. On information and belief, Defendant has had actual knowledge, or has been deliberately or recklessly ignorant, of the existence of Security Exploit.

17. On information and belief, because Defendant has charged and continues to charge (or has caused and continues to cause third-party vendors to charge) the Government for a product that it knows or should know is defective and non-compliant with material contract terms (express or implied) and Security Standards, each bill, invoice, or other claim for payment or approval of the eSignature Product and related products and services presented or caused to be presented by Defendant to the Government is a false or fraudulent claim under FCA Section 3729(a)(1)(A). Such claims are false or fraudulent regardless of whether there is evidence that the Security Exploit has been used in any particular instance(s).

18. On information and belief, Defendant's knowing misrepresentations (explicit or implicit) that the eSignature Product is secure and compliant with material contract terms (express or implied) and Security Standards are false statements material to false or fraudulent claims under FCA Section 3729(a)(1)(B). In addition, all contracts, agreements, or other records between Defendant (or a third-party vendor) and the Government regarding purchase or other payments for use of the eSignature Product and related products and services are false records material to false or fraudulent claims under FCA Section 3729(a)(1)(B).

19. On information and belief, because the existence of the Security Exploit undermines the integrity of all Government records executed through the eSignature Product—including internal Governmental records and records with external parties including but not limited to Defendant—it is unfit for the purpose for which it was procured.

20. On information and belief, because of Defendant's acts, the Government has sustained damages in an amount to be determined at trial in the form of payments to Defendant (or third-party vendors) for use of the eSignature Product and related products and services, as

well as immeasurable damages from the Security Exploit's undermining of the integrity of all Government records executed through the eSignature Product.

## PARTIES

21.    Relator Judith Silver is a citizen of the United States. She has worked with and for several companies that are customers of Defendant's products and services, including the eSignature Product. Throughout her career, she has extensively used the eSignature Product, as well as other commercially available document viewing, conversion, and editing tools needed to execute the Security Exploit. Relator is suing on behalf of the Government, the real party in interest.

22.    Defendant DocuSign is a publicly traded Delaware corporation with its corporate headquarters and principal place of business in San Francisco, California. Form 10-K, *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001261333/2ac6cc42-2890-41f6-9d25-7c8d0b6fe027.pdf (Annual Report for fiscal year ended January 31, 2022) ("2021 Form 10-K"). Defendant does business throughout the United States and internationally, including in the Southern District of New York. Defendant has multiple offices in the United States and abroad, including an office in Harrison, NY, with an address of 500 Mamaroneck Ave., Suite 403, Harrison, NY 10528. *See Contact Us*, DocuSign, https://www.docusign.com/company/contact-us (last visited Apr. 27, 2022).

23.    Formed in 2003, Defendant is a software technology company that describes itself as having "pioneered the development of e-signature technology, and today . . . helps organizations connect and automate how they prepare, sign, act on, and manage agreements." *About DocuSign*, DocuSign, https://www.docusign.com/company (last visited Nov. 4, 2021). Its "anchor product" is eSignature, a product designed to "enable[] sending and signing of

6

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

agreements on a wide variety of devices, from virtually anywhere in the world, securely." 2021 Form 10-K at 8. Defendant states that it has over one million paying customers and over one billion users worldwide. *About DocuSign*, DocuSign, https://www.docusign.com/company (last visited Nov. 4, 2021). Defendant represents that its customers include over 800 public sector agencies at the federal, state, and local levels in the United States. *Which public sector agencies trust DocuSign? Look around*, DocuSign, https://www.docusign.com/21st-century-idea-act (last visited May 27, 2022).

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction under 31 U.S.C. §§ 3729, 3730, 3732 (False Claims Act) and 28 U.S.C. § 1331 (Federal Question). This Court has supplemental jurisdiction under 31 U.S.C. § 3732(b) for the State claims because they arise from the same transactions or occurrences as the Federal claims.

25.     This Court has personal jurisdiction over Defendant because 31 U.S.C. § 3732(a) provides that False Claims Act actions "may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendant transacts business in this judicial district by, among other things, operating an office in this District, and one or more of the acts proscribed by 31 U.S.C. § 3729 occurred in this District.

26.     Venue is proper in this District under 31 U.S.C. § 3732(a)-(b), 28 U.S.C. § 1391(b)-(c)(2), and 28 U.S.C. § 1395(a) because, *inter alia*, Defendant is subject to this Court's personal jurisdiction with respect to this action.

27.     On information and belief, and to the Relator's knowledge, no other relator has brought an action based on the same facts upon which this complaint is based under 31 U.S.C. § 3730(b)(5).

28.     On information and belief, and to the Relator's knowledge, the allegations or transactions upon which this complaint is based have not been publicly disclosed under 31 U.S.C. § 3730(e).

29.     To the extent there could have been a public disclosure under 31 U.S.C. § 3730(e)(4)(A), Relator believes she would qualify as an "original source" of the information upon which this complaint is based under 31 U.S.C. § 3730(e).

## LEGAL BACKGROUND

### I.    The False Claims Act

30.     The FCA, 31 U.S.C. §§ 3729-33, imposes civil liability on "any person" who, *inter alia*: (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to an officer, employee, agent of the United States; or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A)-(B).

31.     The FCA defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property" that "is presented to an officer, employee, or agent of the United States" or "is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest . . ." *Id.* at § 3729(b)(2).

32.     The FCA defines "knowingly" to mean "that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the

truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* at § 3729(b)(1)(A). The FCA "require[s] no proof of specific intent to defraud." *Id.* at § 3729(b)(1)(B).

33.    The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* at § 3729(b)(4).

34.    The FCA does not define "false" or "fraudulent." The United States Supreme Court has established that the term "fraudulent" in the FCA "incorporates the common-law meaning of fraud." *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. at 176, 187 (2016).

35.    The United States Congress has stated that knowing conduct which "clearly violates the False Claims Act" includes:

 a. "Requesting payment for goods or services that are defective or of lesser quality than those for which the Government contracted;" and/or

 b. "Demanding payment for goods or services that do not conform to contractual or regulatory requirements."

 Congressional Record (Bound Edition), Volume 155 (2009), Part 10 [House] [Pages 12693-700] (testimony of H. Berman, D-CA), *available at* https://www.govinfo.gov/content/pkg/CRECB-2009-pt10/html/CRECB-2009-pt10-Pg12693.htm.

36.    Courts have generally established the following elements of FCA liability: (1) a false or fraudulent claim, (2) made with scienter, (3) that was material, causing (4) the Government to pay out money. *See United States ex rel. Daugherty v. Tiversa Holding Corp.*, 342 F. Supp. 3d 418, 423-24 (S.D.N.Y. 2018); *see also Bishop v. Wells Fargo & Co.*, 870 F.3d 104, 106 (2d Cir. 2017) ("Escobar set out a materiality standard for FCA claims").

37.    According to the United States Department of Justice:

 False Claims Act liability ***may be based on the knowing misrepresentation of security controls and practices***. In seeking a government contract, or performing

9

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

under it, companies often make representations to the government about their products, services, and cybersecurity practices. These ***representations may be about a system security plan detailing the security controls it has in place***, the company's practices for monitoring its systems for breaches, or password and access requirements. ***Misreporting about these practices may cause the government to choose a contractor who should not have received the contract in the first place***. Or it could cause the government to structure a contract differently than it otherwise would have. ***Knowing misrepresentations of this kind also deprive the government of what it paid for and violate the False Claims Act***.

Justice News, *Acting Assistant Attorney General Brian M. Boynton Delivers Remarks at the Cybersecurity and Infrastructure Security Agency (CISA) Fourth Annual National Cybersecurity Summit*, U.S. Dept. of Justice (Oct. 13, 2021), https://www.justice.gov/opa/speech/acting-assistant-attorney-general-brian-m-boynton-delivers-remarks-cybersecurity-and (emphasis added).

38.    The FCA allows a private person to bring a civil action "for the person and for the United States Government . . . in the name of the Government." 31 U.S.C. § 3730(b)(1).

39.    Any person who violates the FCA is liable for a mandatory civil penalty for each false or fraudulent claim, plus three times the damages sustained by the Government. *Id.* at § 3729(a)(1). The violator is also liable for litigation expenses, fees, and costs for the Government and Relator. *Id.* at § 3729(a)(3), § 3730(d)(1)-(2).

## II.    Regulatory Framework Governing Electronic Signatures

### A. United States

#### *1. UETA*

40.    Enacted in 1999 by the National Conference of Commissioners on Uniform State Laws, the UETA is designed to provide states with a framework to "facilitate and promote commerce and governmental transactions by validating and authorizing the use of electronic records and electronic signatures." Unif. Elec. Transactions Act § 6, cmt. 1(a). Its purpose includes to "promote public confidence in the validity, integrity and reliability of electronic commerce and governmental transactions." *Id.* at § 6, cmt. 1(f). It "covers all electronic records

and signatures which are used in a business, commercial (including consumer) or governmental transaction," with certain limited exceptions. *Id.* at § 3, cmt. 2.

41.     The "fundamental premise" of the UETA is "namely, that the medium in which a record, signature, or contract is created, presented or retained does not affect it's legal significance." *Id.* at § 7, cmt. 1. In other words, "[t]he fact that the information is set forth in an electronic, as opposed to paper, record is irrelevant." *Id.* at § 7, cmt. 1. Thus, the UETA generally "giv[es] electronic signatures the same legal effect as traditional handwritten signatures . . . in certain types of transactions and only when the parties have agreed to conduct the transaction electronically." Thomson Reuters Practical Law, *Uniform Electronic Transactions Act (UETA)*, Resource ID 3-578-4607.

42.     The UETA has been adopted, sometimes with variants, by 49 states (every state except New York), the District of Columbia, and the U.S. Virgin Islands. New York "has not adopted the UETA but has adopted similar laws making electronic signatures legally enforceable." *Id.*; *see also 1999 Electronic Transactions Act*, Uniform Law Commission, https://www.uniformlaws.org/committees/community-home?CommunityKey=2c04b76c-2b7d-4399-977e-d5876ba7e034 (last visited Nov. 18, 2021).

43.     The UETA defines:

    a.  Electronic signature as "an electronic sound, symbol, or process ***attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record***." Unif. Elec. Transactions Act § 2(8) (emphasis added). This definition "expressly provides that the symbol ***must in some way be linked to, or connected with, the electronic record being signed***." *Id.* at § 2, cmt. 7 (emphasis added).

    b.  Electronic record as "a record created, generated, sent, communicated, received, or stored by electronic means." *Id.* at § 2(7).

44.     To have legal effect under the UETA, an electronic record or electronic signature must be attributable to the signer—*i.e.*, it must be "***the act of the person***." *Id.* at § 9(a)-(b)

11

(emphasis added). The "act of the person may be shown in any manner, *including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable*." *Id.* at 9(a) (emphasis added). The statute emphasizes the "*unique importance of security procedures in the electronic environment*," observing that "a technical and technological security procedure *may be the best way to convince a trier of fact that a particular electronic record or signature was that of a particular person*." *Id.* at § 9, cmt. 4 (emphasis added).

45.     The UETA defines security procedure as "a procedure employed for the purpose of *verifying that an electronic signature, record, or performance is that of a specific person* or for *detecting changes or errors in the information in an electronic record*." *Id.* at § 2(14) (emphasis added). The term "includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgement procedures." *Id.*

### 2. ESIGN Act

46.     Enacted in 2000, the ESIGN Act, 15 U.S.C. § 7001, *et seq.*, is a federal law[5] which, consistent with the UETA, generally provides that electronic records and electronic signatures affecting interstate or foreign commerce have the same legal status as paper records and handwritten signatures. 15 U.S.C. §§ 7001(a)(1)-(2).

47.     Consistent with the UETA, the ESIGN Act defines:

   a. Electronic signature as "an electronic sound, symbol, or process, *attached to or logically associated with* a contract or other record and executed or adopted by a person *with the intent to sign the record*." *Id.* at § 7006(5) (emphasis added).

---

[5] The ESIGN Act preempts all inconsistent state legislation, other than state enactments of the UETA.

12

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    b.   Electronic record as "a contract or other record created, generated, sent, communicated, received, or stored by electronic means." *Id.* at § 7006(4).

### 3. *OMB Electronic Signature Guidance*

48.    The United States Office of Management and Budget ("OMB") is "responsible for developing general standards and guidelines for the use of electronic signatures by federal organizations, subject to any special requirements adopted by regulations issued by specific federal organizations." *Use of Electronic Signatures in Federal Organization Transactions, Version 1.0* (Jan. 25, 2013), *available at* https://s3.amazonaws.com/sitesusa/wp-content/uploads/sites/1151/2016/10/Use_of_ESignatures_in_Federal_Agency_Transactions_v1-0_20130125.pdf ("OMB Electronic Signature Guidance"). In January 2013, OMB issued guidance on the use of electronic signatures under the UETA, the ESIGN Act, and the Government Paperwork Elimination Act (collectively referred to in the OMB guidance as the "E-Transaction Laws"). According to OMB, the "statutory requirements for an electronic signature vary slightly" among these laws "but are essentially equivalent." *Id.* at 14.

49.    The OMB Electronic Signature Guidance clarifies the distinction between an electronic signature, a security procedure, and a signing process:

    a.  **Electronic Signature:** "*used to indicate a person's intent to associate himself in some way* to information or to a reason for signing (*e.g.*, agreeing to the terms of a contract, acknowledging receipt of information, etc.) with legal effect." *Id.* at 7 (emphasis added). Any "sound, symbol, or process that is made or adopted by a person *with intent to sign a document* can be used as the form of signature for purposes of creating an electronic signature." *Id.* (emphasis added).

    b.  **Security Procedure:** "employed for the purpose of *verifying that an electronic record, signature, or performance is that of a specific person (attribution)* or for *detecting changes or errors in the information in an electronic record (integrity)*, among other purposes." *Id.* (emphasis added).

    c.  **Signing Process**: "*the overall set of actions, steps, and elements that is used to create a valid and enforceable electronic signature*," including "both the application to an electronic record of a form of signature (*i.e.*, the sound, symbol, or process) to be used as the electronic signature, and one or more processes or

13

security procedures to address the other signature requirements [including identifying and authenticating the signer and ensuring integrity of the electronic record].” *Id.* at 8 (emphasis added).

50. The guidance also sets out requirements for legally binding electronic signatures, “derived from a combination of the E-Transaction Laws and applicable evidentiary requirements for admissibility.” *Id.* at 14. The requirements are “intended to ensure that the electronic signature is functionally equivalent to a handwritten signature.” *Id.* According to OMB, the following requirements “will satisfy all of the E-Transaction Laws” and are required for “creating a valid and enforceable electronic signature . . .” *Id.*

1. A person (*i.e.*, the signer) must use an acceptable electronic ***form of signature***;

2. The electronic form of signature must be executed or adopted by a person with the ***intent to sign*** the electronic record, (*e.g.*, to indicate a person’s approval of the information contained in the electronic record);

3. The electronic form of ***signature must be attached to or associated with the electronic record*** being signed;

4. There must be a means to ***identify and authenticate*** a particular person as ***the signer***; and

5. There must be a means to preserve the ***integrity of the signed record***.

*Id.* (emphasis in original).

51. As detailed below in Part V.A of this Complaint, the following requirements from the above list are particularly relevant to the Security Exploit:

a. **Intent to Sign Requirement:** In order “for an electronic form of signature (*i.e.*, a sound, symbol, or process) to be legally effective as an electronic signature, it must be executed or adopted ***by the signer with an intent to sign***.” *Id.* at 18 (emphasis added) (footnote omitted).

b. **Association of Signature to Record Requirement:** To be “functionally equivalent to a handwritten signature, the E-Transaction laws require that the electronic form of signature must be made a part of the record being signed . . . Specifically, it ***must be attached to, or logically associated with, the record being signed***; otherwise, it is not legally significant.” *Id.* at 22 (emphasis added) (footnote omitted). The same requirement applies to paper-based transactions, where “a document is typically signed by writing one’s name directly on the document to be signed. ***Writing one’s name on a blank sheet of paper, for***

*example, will not qualify as a signature for any specific document*." *Id.* at 21 (emphasis added).[6] Because "an electronic signing process can apply one's electronic signature to something other than what is displayed on a screen," a critical aspect of this requirement is "that *the signing process be established in a manner to ensure that the signer's electronic signature is applied only to what the signer can see and review – nothing more or less*." *Id.* at 22 (emphasis added) (footnote omitted).

Further, "the electronic form of signature applied by the signer *must be linked to the record being signed*." *Id.* at 23 (emphasis added). This linkage requirement is consistent with Section 11.70 of the Part 11 Regulations, discussed below, which require that electronic signatures "shall be linked to their respective electronic records to *ensure that the signatures cannot be excised, copied, or otherwise transferred to falsify an electronic record by ordinary means*." 21 C.F.R. at § 11.70 (emphasis added); OMB Electronic Signature Guidance at 23, n.53.

Satisfying this requirement "must be done in a manner that *allows someone to later determine that the record has been signed*." *Id.* at 23 (emphasis added). This includes "storing the data constituting the electronic form of signature,[7] and doing so in a way that *permanently associates it with the electronic record that was signed*." *Id.* (emphasis added). It is also recommended that additional data elements be appended to or associated with the signature data, including date and time of the signature. *Id.* The signature data "must then be attached to, or logically associated with, the record being signed," which "*must be done at the time of signing*." *Id.* (emphasis added). Various approaches for associating the signature with the document are feasible. But "whatever the approach, it requires implementing an electronic recordkeeping process that, in the future, can provide evidence that a specific electronic signature was applied to or used in connection with a specific electronic record." *Id.* at 24.

c. **Identification and Authentication of the Signer Requirement:** For an electronic signature to be legally valid, "it requires evidence of 'who' the electronic form of signature belongs to, as well as *evidence that the identified person is actually involved with the transaction*." *Id.* at 24-25 (emphasis added). That is, an acceptable signing process *must address "identity and authentication." Id.* at 25. The method for doing so may vary "so long as the method selected satisfies the requirement that it be *as reliable as appropriate* for the purpose in question." *Id.* at 26 (emphasis added). The "as reliable as appropriate" standard requires "an

---

[6] As elaborated in Part IV below, the existence of the Security Exploit effectively renders electronic signatures made through the eSignature Product the equivalent of signing one's name onto a blank sheet of paper because the document can be readily altered after signature, while retaining all the trappings of a secured, unaltered document (*e.g.*, a security banner stating that all signatures are valid).

[7] The electronic form of signature may consist of a symbol or a sound, such as a typed name, a digitized image of a handwritten name, a PIN, or a digital signature. *Id.*

analysis of: (1) the risk that an alleged signer (or other interested third party) will be able to successfully repudiate the electronic signature, deny that it was made with an intent to sign, or challenge the integrity of the signed record; and (2) the loss, cost, or other impact of such a successful challenge to the enforceability of the signed record." *Id.* at 29. This includes considering "the risk of unauthorized alteration." *Id.* at 30.

d. **Integrity of Signed Record Requirement:** The "usability, admissibility, and provability of a signed electronic record requires procedures be undertaken to *ensure the continuing integrity of both the electronic record and its electronic signature following completion of the signing process*." *Id.* at 26 (emphasis added). Data integrity "is concerned with the accuracy and completeness of electronic information communicated over the Internet or stored in an electronic system, and with *ensuring that no unauthorized alterations are made to such information either intentionally or accidentally*." *Id.* (emphasis added). Ensuring integrity requires "*guarding against improper information modification or destruction*, for the full retention period of the record." *Id.* (emphasis added) (footnote omitted). This requirement "flows from the fact that electronic records are easily altered in a manner that is not detectable. In an electronic transaction of any significance, the parties to the transaction must be confident of the integrity of the information before they rely or act on the record." *Id.* (footnote omitted).

*4. Part 11 Regulations*

52.    The Part 11 Regulations, 21 C.F.R. Part 11, impose requirements beyond those in the UETA or the ESIGN Act for electronic records and electronic signatures to be accepted by the United States Food and Drug Administration ("FDA"). The regulations set forth the criteria under which FDA considers electronic records and electronic signatures "to be trustworthy, reliable, and generally equivalent to paper records and handwritten signatures executed on paper." 21 C.F.R. § 11.1(a).

53.    Critically, the regulations require that electronic signatures "*shall be linked to their respective electronic records to ensure that the signatures cannot be excised, copied, or otherwise transferred to falsify an electronic record by ordinary means*." *Id.* at § 11.70 (emphasis added); *see also* UETA § 2, cmt. 7; OMB Electronic Signature Guidance at 23, n.53.

54.    The Part 11 regulations also require, *inter alia*, that:

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

a. Electronic records be validated "*to ensure accuracy*, reliability, consistent intended performance, and the *ability to discern invalid or altered records*." 21 C.F.R. § 11.10(a) (emphasis added).

b. Electronic records use "secure, computer-generated, time-stamped *audit trails to independently record the date and time of operator entries and actions that create, modify, or delete electronic records*." 21 C.F.R. § 11.10(e) (emphasis added). Further, "[r]ecord changes *shall not obscure previously recorded information*." *Id.* (emphasis added).

c. Electronic signatures be "unique to one individual and *shall not be reused by, or reassigned to, anyone else*." 21 C.F.R. § 11.100(a) (emphasis added).

d. Electronic signatures be "used *only by their genuine owners*." 21 C.F.R. § 11.200(a)(2) (emphasis added).

e. Electronic signatures be "administered and executed to ensure that attempted use of an individual's electronic signature by anyone other than its genuine owner requires collaboration of two or more individuals." 21 C.F.R. § 11.200(a)(3).

5. *21st Century Integrated Digital Experience ("IDEA") Act*

55.    Enacted in 2018, the 21st Century IDEA Act is designed to "ensur[e] [the] government leverages available technology to provide cohesive, user-friendly online service that people around this country expect and deserve." United States General Services Administration, *21st Century Integrated Digital Experience Act*, Digital.gov, https://digital.gov/resources/21st-century-integrated-digital-experience-act/ (last visited Nov. 10, 2021) (quoting bill sponsor).

56.    The 21st Century IDEA Act requires all Federal executive branch agencies to, *inter alia*, "modernize their websites," "digitize services and forms," and "accelerate use of e-signatures." *Id.*; *see also* P.L. 115-336, 132 Stat. 5025 (Dec. 20, 2018). Among other tasks, each executive agency must "ensure that any paper-based form that is related to serving the public is made available in a digital format" and develop "a plan to accelerate the use of electronic signatures . . ." *Id.* at §§ 4(C), 5. Federal agencies have yet to fully implement these requirements. *See* Letter from United States Congress, House Committee on Oversight and Reform, to S. Young, Acting    Director,    OMB    (May    6,    2021),    *available    at*

17

https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-05-06.GEC%20et%20al.%20to%20Young-OMB%20re%2021st%20Century%20IDEA.pdf.

B.  European Union eIDAS

57.    Adopted by the European Union in 2014, the eIDAS aims "to enhance trust in electronic transactions in the internal market by providing a common foundation for secure electronic interaction between citizens, businesses and public authorities, thereby increasing the effectiveness of public and private online services, electronic business and electronic commerce in the Union." Commission Regulation 910/2014, 2014 O.J. (L 257) 73 (EU). Consistent with the U.S. UETA and ESIGN Act, this includes "establish[ing] the principle that an electronic signature should not be denied legal effect on the grounds that it is in an electronic form or that it does not meet the requirements of the qualified electronic signature." *Id.* at 79.

58.    The eIDAS prescribes standards for three signature types: (1) electronic signatures; (2) advanced electronic signatures; and (3) qualified electronic signatures.

59.    An electronic signature is "data in electronic form which is ***attached to or logically associated with*** other data in electronic form and which is used by the signatory to sign." *Id.* at 84 (emphasis added).

60.    An advanced electronic signature requires that: "(a) it is ***uniquely linked to the signatory***; (b) it is ***capable of identifying the signatory***; (c) it is created using electronic signature creation data that the signatory can, with a high level of confidence, ***use under his sole control***; and (d) it is ***linked to the data*** signed therewith in such a way that ***any subsequent change in the data is detectable***." *Id.* at 100 (emphasis added).

61.    A qualified electronic signature requires "an advanced electronic signature that is created by a qualified electronic signature creation device, and which is based on a qualified certificate for electronic signatures." *Id.* at 84. Qualified electronic signature creation devices

must, in relevant part, ensure that "the electronic signature creation data used for electronic signature creation cannot, with reasonable assurance, be derived and the electronic signature is *reliably protected against forgery* using currently available technology . . . [and] *can be reliably protected by the legitimate signatory against use by others*." *Id.* at 112 (emphasis added). Further, validation of qualified electronic signatures requires that "*the integrity of the signed data has not been compromised*." *Id.* at 103 (emphasis added).

## GENERAL ALLEGATIONS

III.    **Background**

   A. Defendant's eSignature Product

     *1. Overview*

62. Defendant describes its purpose as "help[ing] organizations do business faster *with less risk*, lower costs, and better experiences for customers and employees . . . by transforming the foundational element of business: the agreement." 2021 Form 10-K at 5 (emphasis added). Specifically, Defendant "helps organizations connect and automate how they prepare, sign, act on, and manage agreements." Form 8-K, Fiscal 2022 Quarter 2 (Sept. 1, 2021), *available at* https://s22.q4cdn.com/408980645/files/doc_financials/2022/q2/cf39d57b-8cb3-4a5f-9243-7983d8a46654.pdf ("2022 Q2 Form 8-K").

63. Defendant offers a suite of products, known as the "DocuSign Agreement Cloud," which is a "cloud software suite for automating and connecting the entire agreement process." 2021 Form 10-K at 5. Using these products, "organizations can centralize, standardize, and automate agreement processes—so employees have an easy way to use approved processes and templates, with audit trails generated automatically." *Id.* at 7. The technology "can be used

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

broadly across business functions: contracts for sales, employment offers for human resources, non-disclosure agreements for legal, among many others." *Id.* at 5.

64. The "anchor product" within the DocuSign Agreement Cloud is the eSignature Product, which Defendant describes as "the world's #1 electronic signature solution," 2021 Form 10-K at 5, 8, and "the world's #1 way to sign electronically on practically any device, from almost anywhere, at any time." 2022 Q2 Form 8-K at 3. Defendant offers "multiple editions and add-ons" to the eSignature Product "that can be combined to fit the needs of different organizational sizes, industries, and regions." 2021 Form 10-K at 8.

### 2. *Marketing, Sales, and Customer Base*

65. In general, Defendant sells access to its DocuSign Agreement Cloud product platform on a subscription basis. 2021 Form 10-K at 5. Different pricing structures apply to different products. For the eSignature Product, subscriptions are priced in part "based on the functionality required" by the customer. *Id.* at 9. Subscription fees include use of the software suite and access to customer support. *Id.* at 41. Contracts are typically one year in length but may be up to three years or longer. *Id.* at 22. "[S]ubstantially all" of Defendant's multi-year customers "pay in annual installments, one year in advance." *Id.* at 41.

66. Any user may sign documents using the eSignature Product for free. However, Defendant charges users for "premium features," including "requesting signatures from others" and "signer authentication." *FAQ*, DocuSign, https://www.docusign.com/products/electronic-signature (last visited Nov. 10, 2021). Such features require purchasing a subscription plan.

67. Defendant may also charge customers for "professional and other non-subscription services, which consist primarily of fees associated with providing new customers deployment and integration services," including "consulting and training services from assisting customers in

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

implementing and expanding the use of [the] software suite." 2021 Form 10-K at 41, 70. These

services are priced "on a time and materials basis and on a fixed fee basis." *Id.* at 43.

68.     For Fiscal Year 2021, Defendant reported total revenues of approximately $1.5

billion, around $1.4 billion of which was subscription revenue. *DocuSign Announces Fourth*

*Quarter and Fiscal Year 2021 Financial Results*, DocuSign (Mar. 11, 2021),

https://investor.docusign.com/investors/press-releases/press-release-details/2021/DocuSign-

Announces-Fourth-Quarter-and-Fiscal-Year-2021-Financial-Results/.

69.     Defendant reports that it has over one million paying customers and over one

billion users worldwide, including "[o]ver 3,000 federal, state, and local government agencies."

*About DocuSign*, DocuSign, https://www.docusign.com/company (last visited June 3, 2022). Its

customers range from "the largest enterprises and governmental organizations down to sole

proprietors and individual end users," spanning "across industries, around the world." *Id.*; 2021

Form 10-K at 5, 10, 23.

### 3.  *Government Contracts*

70.     Defendant's customers in the United States include over 800 public sector agencies

at the federal, state, and local level, including "a number of federal cabinet-level agencies." *Which*

*public sector agencies trust DocuSign? Look around*, DocuSign, https://www.docusign.com/21st-

century-idea-act (last visited May 27, 2022).

71.     On information and belief, Government customers of Defendant's eSignature

Product include (or have previously included) agencies and public sector entities in the Federal

government, as well as each of the State Plaintiff governments.

#### a.  *Federal Government Customers*

72.     Defendant offers a version of the DocuSign Agreement Cloud that is specific to

Government users, known as the "DocuSign Agreement Cloud for Government." This product

suite includes a version of the eSignature Product that is specific to Federal government agencies, known as "eSignature for U.S. Federal Government." 2021 Form 10-K at 8.[8] According to Defendant, this product "is a FedRAMP-authorized[9] version of DocuSign eSignature for U.S. federal government agencies, which runs within special data center boundaries and offers dedicated storage and encryption of agencies' data." 2021 Form 10-K at 8.

73.     FedRAMP lists the following Federal government agencies as using DocuSign Federal products, including the eSignature Product:

      a.   Animal and Plant Health Inspection Service

      b.   Bureau of Land Management

      c.   Centers for Medicare & Medicaid Services

      d.   Department of Agriculture

      e.   Department of Commerce

      f.   Department of Education

      g.   Department of Energy

      h.   Department of Health and Human Services

      i.   Department of the Interior

---

[8] As noted above, references to the "eSignature" product in this Complaint include the "eSignature for U.S. Government" product, unless otherwise specified.

[9] FedRAMP refers to the Federal Risk and Authorization Management Program, a program established in 2011 designed to promote "the adoption and use of cloud services by the federal government." *Program Basics*, FedRAMP, https://www.fedramp.gov/program-basics/ (last visited Nov. 29, 2021). It does so by establishing "a standardized approach to security and risk assessment for cloud technologies and federal agencies." *Id.* Before FedRAMP, cloud service providers "had to meet different security requirements for each federal agency." *A FedRAMP Overview: Introduction*, *available at* https://www.fedramp.gov/assets/resources/documents/Transcript-FedRAMP-Overview.pdf. With FedRAMP, a "cloud service offering is authorized once and then the security package can be used by any federal agency." *Id.* Per Federal government policy, "cloud services that hold federal data must be FedRAMP Authorized." *CSP Authorization Playbook: Getting Started with FedRAMP* (Jan. 2022) at 2, *available at* https://www.fedramp.gov/assets/resources/documents/CSP_Authorization_Playbook_Getting_Started_with_FedRAMP.pdf (citation omitted).

j.  Department of the Treasury (including the Internal Revenue Service)

k.  Department of Transportation

l.  Department of Veterans Affairs

m.  Executive Office of the President

n.  Federal Aviation Administration

o.  Federal Communications Commission

p.  Federal Deposit Insurance Corporation

q.  Federal Emergency Management Agency

r.  Federal Student Aid

s.  FirstNet

t.  General Services Administration

u.  Health Resources and Services Administration

v.  Interior Business Center

w.  National Institute of Standards and Technology

x.  National Nuclear Security Administration / Lawrence Livermore National Laboratory

y.  National Telecommunications and Information Administration

z.  Tennessee Valley Authority

*See DocuSign*, FedRAMP, https://marketplace.fedramp.gov/#!/product/docusign-federal-esignature-gen-negotiate?sort=productName (last visited Nov. 18, 2021).

74.    Additionally, the following Federal government agencies have had known contracts with DocuSign:

a.  Department of Defense

b.  Department of Homeland Security

c.  Department of Housing and Urban Development

d.  Department of Labor

23

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    e.   Department of State

    f.   Nuclear Regulatory Commission

    g.   Smithsonian Institution

    h.   U.S. Agency for International Development

        *b.   State and Municipal Government Customers*

75.    In addition, on information and belief, current or former customers of Defendant's eSignature Product at the State Plaintiff level include but are not necessarily limited to:

    a.   ***California***: Alameda County, California; California Department of Corrections and Rehabilitation; California Natural Resources Agency and Department of Water Resources; City of San Francisco, California; Covered California; CA Department of Developmental Services (including the Tri-Counties Regional Center); Santa Clara County, California; University of California, Santa Barbara.[10]

    b.   ***Delaware***: Delaware Division of Small Business; Delaware Department of Health and Social Services.[11]

    c.   ***District of Columbia***: District Department of Transportation; District Office of Contracting & Procurement; District Office of Lottery & Gaming.[12]

---

[10] *See California Department of Corrections and Rehabilitation Embraces a Paradigm Shift with DocuSign eSignature*, DocuSign, https://www.docusign.com/customer-stories/california-department-of-corrections-and-rehabilitation-embraces-a-paradigm-shift-with-docusign-esignature (last visited Nov. 18, 2021); *DocuSign helps the California Natural Resources Agency and the Department of Water Resources accelerate its digital transformation*, DocuSign, https://www.docusign.com/customer-stories/docusign-helps-the-california-natural-resources-agency-and-the-department-of-water-resources-accelerate-its-digital-transformation (last visited Nov. 18, 2021); *Case Study: Covered California*, DocuSign, https://www.docusign.com/sites/default/files/resource_event_files/Covered%20California%20Case%20Study.pdf (last visited Nov. 18, 2021); *Government Use of Electronic Signatures*, DocuSign (July 1, 2020), https://www.docusign.com/blog/government-use-electronic-signatures; *DocuSign at UCSB*, DocuSign, https://docusign.lsit.ucsb.edu/using-docusign (last visited Nov. 18, 2021); *see also DocuSign Contract Guide* (2021), *available at* https://static.carahsoft.com/concrete/files/2916/2022/7282/carahsoft-DocuSign-contract-guide-5-5-21.pdf ("DocuSign Contract Guide") at 1-2.

[11] *See* Delaware Division of Small Business, *DE Relief Grants Expense Reporting – How-to Manual for Businesses*, *available at* https://business.delaware.gov/wp-content/uploads/sites/118/2021/08/DE-Relief-Grants-How-To-Manual-FINAL-1.pdf; *see also, e.g.*, Delaware Department of Health and Human Services, *Policy and Procedure*, *available at* https://dhss.delaware.gov/dhss/dsamh/files/DSAMH025.pdf; *see also* DocuSign Contract Guide at 2.

[12] *See* Barton Phillips, *DocuSign: Accelerating Government with DocuSign*, *available at* https://www.carahsoft.com/download_file/view_inline/10440; George A. Schutter, *Responses to*

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    d. ***Florida***: Florida Department of Transportation; Florida State University; University of Florida.[13]

    e. ***Georgia***: Atlanta Housing Authority; DeKalb County, Georgia School District; Georgia Department of Community Supervision; Georgia Department of Transportation; Metropolitan Atlanta Regional Transportation Authority.[14]

    f. ***Hawaii***: Hawaii Department of Commerce and Consumer Affairs; University of Hawaii Community Colleges.[15]

    g. ***Illinois***: Illinois Department of Innovation and Technology; Illinois Housing Development Authority.[16]

    h. ***Indiana***: Indiana Department of Administration; Indiana Department of Child Services.[17]

---

*Fiscal Year 2018 Performance Oversight Questions*, Government of the District of Columbia, Office of Contracting & Procurement (Feb. 2019), *available at* https://dccouncil.us/wp-content/uploads/2019/02/ocp.pdf; *see also, e.g.*, Government of the District of Columbia, Office of the Chief Financial Officer, *Office of Lottery & Gaming – Language Access Policy* (Nov. 2020), *available at* https://dclottery.com/sites/default/files/2020-12/DC-Lottery-Language-Access-Policy.pdf.

[13] *See Quick Summary: FDOT Pilot for E-signature Web Application*, Florida Department of Transportation, https://fdotwww.blob.core.windows.net/sitefinity/docs/default-source/contracts/d5/misc/docusign-fdot-electronic-contracting.pdf?sfvrsn=6a0f2d19_2 (last visited Nov. 27, 2021); *Sign documents remotely with DocuSign*, Florida State University, https://its.fsu.edu/article/sign-documents-remotely-docusign (last visited Nov. 27, 2021); *UF DocuSign*, University of Florida, https://it.ufl.edu/ufdocusign/ (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 2.

[14] *See* Barton Phillips, *Accelerating Government with DocuSign*, *available at* https://www.carahsoft.com/download_file/view_inline/10440.

[15] *See* State of Hawaii Department of Commerce and Consumer Affairs, *Addendum 1 to Request for Proposals Solicitation No. RFP 20-INS-01*, *available at* https://hiepro.ehawaii.gov/resources/72477/Addendum%201-HIePRO%20Question%20Addendum.pdfC:\Users\lcouvill\Downloads\Addendum 1-HIePRO Question Addendum.pdf; *Verification*, University of Hawaii Community Colleges, https://uhcc.hawaii.edu/financial/verification.php (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 2.

[16] *See* Information Technology Hosting Services, *Report on the Description of the Information Technology Hosting Services and on the Suitability of the Design and Operating Effectiveness of the Controls Relevant to Security and Availability for the Period July 1, 2020 to June 30, 2021* (Feb. 2021), *available at* https://www.auditor.illinois.gov/Audit-Reports/Performance-Special-Multi/Special-Audits/DoIT/FY21-DoIT-IT-Hosting-SOC-Rpt-Full.pdf; Illinois Auditor General, *List of Emergency Purchase Statements Filed with the Office of the Auditor General* (2020), *available at* https://www.auditor.illinois.gov/Other-Public-Documents/EmergencyPurch/FY21-1st-Qtr-Emerg-Purch.pdf; *see also* DocuSign Contract Guide at 1-2.

[17] *See eSigning Electronic Contracts*, Indiana Department of Administration, https://www.in.gov/idoa/procurement/supplier-resource-center/esigning-electronic-contracts/

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    i.   ***Iowa***: Iowa Lottery; Iowa State University.[18]

    j.   ***Massachusetts***: Massachusetts Office of the Comptroller.[19]

    k.   ***Maryland***: Baltimore County, Maryland; Prince George's County, Maryland; University of Maryland, Baltimore.[20]

    l.   ***Minnesota***: Minnesota State Colleges and Universities system; State of Minnesota.[21]

    m.   ***Montana***: State of Montana.[22]

    n.   ***Nevada***: Nevada Department of Transportation.[23]

---

(last visited Nov. 27, 2021); *Indiana Department of Child Services Streamlines Case Management*, DocuSign, https://www.docusign.com/blog/indiana-department-child-services-streamlines-case-management (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 1-2.

[18] *See DocuSign FAQs*, Iowa Lottery, https://www.ialottery.com/Pages/FAQs/FAQ-Docusign.aspx (last visited Nov. 27, 2021); *Background Checks*, Iowa State University, https://education.iastate.edu/current-students/educator-preparation-program/resources/background-checks/ (last visited Nov. 27, 2021).

[19] *See E-Signature solutions coming soon to both Non-Executive and Executive agencies*, Office of the Comptroller, Commonwealth of Massachusetts (Dec. 15, 2020), https://www.macomptroller.org/announcement/e-signature-solutions-coming-soon-to-both-non-executive-and-executive-agencies/; *see also* DocuSign Contract Guide at 2.

[20] *See* Barton Phillips, *Accelerating Government with DocuSign*, *available at* https://www.carahsoft.com/download_file/view_inline/10440; University of Baltimore, Maryland, *Policies & Procedures*, *available at* https://www.umaryland.edu/policies-and-procedures/library/administration/procedures/general-administration-procedures/umb-procedure-regarding-electronic-signatures.php.

[21] *See DocuSign*, St. Cloud State University, https://services.stcloudstate.edu/TDClient/1919/Portal/KB/ArticleDet?ID=132770 (last visited Nov. 27, 2021); SWIFT, *Quick Reference Guide* (Nov. 1, 2019), *available at* https://mn.gov/mmb-stat/documents/swift/training/trainingguides/swift-sc-sign-contract-docs-docusign.pdf; *see also* DocuSign Contract Guide at 2.

[22] *See Vendor Registration & Portal*, Montana Department of Administration, State Procurement Bureau, State Financial Services Division, https://spb.mt.gov/Vendor-Resources/Vendor-Registration-Portal (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 2.

[23] *See Customer Spotlight: DocuSign for Government*, DocuSign, https://www.docusign.com/webinars/customer-spotlight-docusign-for-government-0 (last visited Nov. 27, 2021); *Case Study: Nevada DOT Speeds Contracts by 10x with DocuSign*, *available at* https://www.docusign.com/sites/default/files/casestudy_public_sector_nevada_dot.pdf; *see also* DocuSign Contract Guide at 2.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    o.   *New Jersey*: Rutgers University.[24]

    p.   *New Mexico*: New Mexico Educational Retirement Board.[25]

    q.   *New York***:** New York Department of Labor.[26]

    r.   *North Carolina*: State of North Carolina.[27]

    s.   *Rhode Island*: Library Board of Rhode Island.[28]

    t.   *Tennessee*: City of Memphis, Tennessee.[29]

    u.   *Vermont*: Agency of Natural Resources, Department of Forests, Parks and Recreation.[30]

    v.   *Virginia*: Fairfax County, Virginia; Virginia Commonwealth University; Virginia Tech.[31]

---

[24] *See DocuSign*, Rutgers University Ethics and Compliance, https://uec.rutgers.edu/programs/contract-management/docusign-and-meditract/ (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 1-2.

[25] *See New Mexico Educational Retirement Board Keeps Pace with a Retirement Boom Using DocuSign eSignature*, DocuSign, https://www.docusign.com/customer-stories/new-mexico-educational-retirement-board-keeps-pace-with-a-retirement-boom-using-docusign-esignature (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 1-2.

[26] *See DocuSign FAQs*, New York State Department of Labor, https://dol.ny.gov/unemployment/docusign-faqs (last visited Nov. 27, 2021).

[27] *See State of North Carolina Standardizes on DocuSign for Secure, Legal Government eSignatures Statewide*, DocuSign (Nov. 27, 2012), https://www.docusign.co.uk/press-releases/state-of-north-carolina-standardizes-on-docusign-for-secure-legal-government.

[28] *See* Library Board of Rhode Island, Minutes, *The regular meeting of the Library Board of Rhode Island was held on September 14, 2020*, *available at* https://opengov.sos.ri.gov/Common/DownloadMeetingFiles?FilePath=\Minutes\218\2020\376257.pdf.

[29] *See Memphis Keeps Business Moving with DocuSign eSignature*, DocuSign, https://www.docusign.com/customer-stories/memphis-keeps-business-moving-with-docusign-esignature (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 2.

[30] *See Application*, Agency of Natural Resources, Department of Forests, Parks and Recreation, https://fpr.vermont.gov/state_lands/leases-licenses-and-special-use-permits/application (last visited March 11, 2022).

[31] *See* Fairfax County, *DocuSign Instructions*, *available at* https://www.fairfaxcounty.gov/healthymindsfairfax/sites/healthymindsfairfax/files/assets/documents/covid-19/docusign-instructions.pdf; *Technology Services*, Virginia Commonwealth University, https://ts.vcu.edu/askit/university-resources/docusign/getting-started/ (last visited Nov. 27, 2021); *Forms*, Virginia Tech, https://caus.vt.edu/academics/Forms-Resources/Forms.html (last visited Nov. 27, 2021); *see also* DocuSign Contract Guide at 2.

76.    Further, on information and belief, current or former customers of Defendant's

eSignature Product at the municipal level include but are not necessarily limited to:

   a.  ***City of Chicago, Illinois***: City Colleges of Chicago.[32]

   b.  ***City of New York, New York***: Mayor's Office of Contract Services.[33]

   c.  ***City of Philadelphia, Pennsylvania***: Office of the Chief Administrative Officer.[34]

   d.  ***County of Allegheny, Pennsylvania***: Allegheny County Department of Human Services.[35]

   e.  ***County of Broward, Florida***: Broward County Water and Wastewater Services.[36]

   *c.  Known Federal Government Contracts*

77.    Pursuant to the General Services Acquisition Manual (GSAM) Procedures, GSAM

section 504.605-70, titled Federal Procurement Data System Public–Access to Data, provides that:

"The General Services Administration awarded a contract for creation and operation of the Federal

procurement Data System (FPDS) database. That database includes information reported by

departments and agencies as required by FAR subpart 4.6. One of the primary purposes of the

FPDS database is to provide information on Government procurement to the public."[37]

---

[32] *See DocuSign is Here!*, City Colleges of Chicago, https://pages.ccc.edu/apply/docusign-resources-temp/.

[33] *See PASSPort Highlights*, NYC Mayor's Office of Contract Services, https://home3.nyc.gov/site/mocs/systems/highlights-of-passport.page (last visited May 4, 2022).

[34] *See ICYMI: Philadelphia Uses Digital Tools to Streamline City Services*, Office of the Chief Administrative Officer, https://www.phila.gov/2018-06-22-icymi-philadelphia-uses-digital-tools-to-streamline-city-services/ (last visited May 4, 2022).

[35] *See Alegheny [sic] County Department of Human Services 2021 Annual Contract Provider Technical Assistance* (Mar. 18, 2021), https://www.alleghenycounty.us/WorkArea/linkit.aspx?LinkIdentifier=id&ItemID=6442474464.

[36] *See Broward County Water and Wastewater Services*, Broward County, https://powerforms.docusign.net/f0a501ff-d564-4ec6-8aa6-348b0d5eb952?env=na4&acct=a69bb494-df0a-4e72-b02c-a3007bf08474&accountId=a69bb494-df0a-4e72-b02c-a3007bf08474&recipientLang=en (last visited May 4, 2022).

[37] Available at https://www.acquisition.gov/gsam/part-504#GSAM_504_605_70 (last visited Oct. 26, 2022).

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

78.     A search of the FPDS database (https://www.fpds.gov/) for the term "DocuSign" produces 151 results and indicates that the following agencies have one or more contracts for DocuSign services: Department of Agriculture, Department of Commerce, Department of the Interior, Department of Defense, Department of Health and Human Services, Department of the Treasury, Department of Veterans Affairs, General Services Administration, U.S. Agency for International Development, Department of Education, Department of Energy, Department of Homeland Security, Department of Housing and Urban Development, Department of Labor, Nuclear Regulatory Commission, Smithsonian Institution, Department of State, Department of Transportation.  The list of contracts generated on 10/25/22 is attached as Exhibit A.

79.     Based on the FPDS database, the Department of Agriculture has the following contracts for DocuSign services:

a.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639521F1078
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $113,098.01
    Date Signed: 9/30/21
    Contract Period: 9/29/21-9/14/24

b.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639520F1219
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $684,613.92
    Date Signed: 9/25/20
    Contract Period: 9/21/20-9/14/21

c.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639521F0809
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $57,269.36
    Date Signed: 8/3/21
    Contract Period: 7/30/21-7/29/22

d.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639522F0256
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $322,037.58
    Date Signed: 1/24/22
    Contract Period: 1/1/22-12/31/22

29

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

e.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639521F0228
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $322,037.60
    Date Signed: 1/22/21
    Contract Period: 1/1/21-12/31/21

f.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639522F0087
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $20,052.63
    Date Signed: 11/5/21
    Contract Period: 11/5/21-6/19/22

g.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639522F0290
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $100,652.44
    Date Signed: 1/24/20
    Contract Period: 1/24/20-6/28/20

h.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639520P0493
    Entity Legal Business Name: FNH, Inc.
    Action Obligation: $15,783.21
    Date Signed: 9/28/20
    Contract Period: 9/25/20-9/29/21

i.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639522F0828
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $160,000.00
    Date Signed: 7/18/22
    Contract Period: 7/15/22-7/14/23

j.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639522F0619
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $8,000.00
    Date Signed: 5/5/22
    Contract Period: 5/5/22-5/4/23

k.  Contracting Agency: Animal and Plant Health Inspection Service
    Award ID: 12639522F0087
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $21,271.88
    Date Signed: 1/31/21
    Contract Period: 11/5/21-6/19/22

l.  Contracting Agency: Animal and Plant Health Inspection Service

30

Award ID: 12639522F0148
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $16,970.30
Date Signed: 12/7/21
Contract Period: 12/6/21-6/30/22

m. Contracting Agency: Food and Nutrition Service
Award ID: 12319820F0009
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $151,658.37
Date Signed: 1/30/20
Contract Period: 1/30/20-7/30/20

n. Contracting Agency: Food and Nutrition Service
Award ID: 12319820POP17
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $14,304.45
Date Signed: 3/30/20
Contract Period: 4/1/20-7/31/20

o. Contracting Agency: Food and Nutrition Service
Award ID: 12319820POP11
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $14,304.45
Date Signed: 3/30/20
Contract Period: 4/1/20-7/31/20

p. Contracting Agency: Food and Nutrition Service
Award ID: 12319820P0044
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $0
Date Signed: 3/31/20
Contract Period: 3/31/20-7/31/20

q. Contracting Agency: Rural Housing Service
Award ID: 12SAD120F0032
Entity Legal Business Name: AccessAgility LLC
Action Obligation: $72,276.46
Date Signed: 9/14/20
Contract Period: 9/14/20-9/13/21

r. Contracting Agency: USDA, Departmental Administration
Award ID: 12314421F0745
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $22,651.89
Date Signed: 9/17/21
Contract Period: 9/17/21-9/19/22

s. Contracting Agency: USDA, Departmental Administration
Award ID: 12314422F0482
Entity Legal Business Name: Enterprise Technology Solutions, Inc.

Action Obligation: $17,017.29
Date Signed: 7/19/22
Contract Period: 7/20/22-7/19/23

t. Contracting Agency: USDA, Departmental Administration
Award ID: 12314420F0355 (P00012)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $18,347.65
Date Signed: 3/31/22
Contract Period: 6/19/20-6/19/22

u. Contracting Agency: USDA, Departmental Administration
Award ID: 12314420F0355 (P00010)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $76,321.62
Date Signed: 3/16/22
Contract Period: 6/19/20-6/19/22

v. Contracting Agency: USDA, Departmental Administration
Award ID: 12314421F0676
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $10,652.83
Date Signed: 9/8/21
Contract Period: 9/1/21-6/19/22

80.    Based on the FPDS database, the Department of Commerce has the following contracts for DocuSign services:

a. Contracting Agency: National Institute of Standards and Technology
Award ID: 1333ND21FNB130025
Entity Legal Business Name: AccessAgility, LLC
Action Obligation: $20,592.03
Date Signed: 12/1/20
Contract Period: 4/29/20-4/29/22

b. Contracting Agency: Office of the Secretary
Award ID: 1331L522FNB130120
Entity Legal Business Name: Countertrade Products, Inc.
Action Obligation: $13,348.61
Date Signed: 2/28/22
Contract Period: 2/28/22-4/27/22

c. Contracting Agency: Office of the Secretary
Award ID: 1331L522FNAAJ0579
Entity Legal Business Name: Countertrade Products, Inc.
Action Obligation: $21,746.84
Date Signed: 8/14/22
Contract Period: 8/15/22-9/15/22

32

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

81.  Based on the FPDS database, the Department of the Interior has the following contracts for DocuSign services:

a.  Contracting Agency: Bureau of Indian Affairs
 Award ID: INISMK00100033
 Entity Legal Business Name: DocuSign Inc.
 Action Obligation: $8,287.00
 Date Signed: 11/25/09
 Contract Period: 11/29/09-11/29/10

b.  Contracting Agency: Bureau of Indian Affairs
 Award ID: INISMK00100033 (1)
 Entity Legal Business Name: DocuSign Inc.
 Action Obligation: $1,775.00
 Date Signed: 12/8/10
 Contract Period: 11/29/10-5/29/11

c.  Contracting Agency: Bureau of Indian Affairs
 Award ID: 140A2320P0733
 Entity Legal Business Name: Carahsoft Technology Corporation
 Action Obligation: $168,433.20
 Date Signed: 9/20/20
 Contract Period: 9/20/20-9/13/21

d.  Contracting Agency: Bureau of Indian Affairs
 Award ID: 140A2320P0733 (P00001)
 Entity Legal Business Name: Carahsoft Technology Corporation
 Action Obligation: $155,953.60
 Date Signed: 9/13/21
 Contract Period: 9/20/20-9/13/22

e.  Contracting Agency: Bureau of Indian Affairs
 Award ID: 140A2320P0733 (P00002)
 Entity Legal Business Name: Carahsoft Technology Corporation
 Action Obligation: $163,680.00
 Date Signed: 9/15/22
 Contract Period: 9/20/20-9/13/23

f.  Contracting Agency: Departmental Offices
 Award ID: 140D0422F0062
 Entity Legal Business Name: Enterprise Technology Solutions, Inc.
 Action Obligation: $18,734.70
 Date Signed: 11/30/21
 Contract Period: 12/1/21-11/30/22

g.  Contracting Agency: Departmental Offices
 Award ID: 140D0422F0062 (P00001)
 Entity Legal Business Name: Enterprise Technology Solutions, Inc.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $0.00
Date Signed: 12/1/21
Contract Period: 12/1/21-11/30/22

h. Contracting Agency: Departmental Offices
Award ID: 140D0422F0062 (P00002)
Entity Legal Business Name: Enterprise Technology Solutions, Inc.
Action Obligation: $0.00
Date Signed: 11/30/21
Contract Period: 12/1/21-11/30/22

82. Based on the FPDS database, the Department of Defense has the following contracts for DocuSign services:

a. Contracting Agency: Department of the Army
Award ID: W81XWH19P0117
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $43,916.80
Date Signed: 9/10/19
Contract Period: 9/15/19-9/15/20

b. Contracting Agency: Department of the Army
Award ID: W81XWH19P0117 (P000001)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $14,102.37
Date Signed: 4/30/20
Contract Period: 9/10/19-5/3/21

c. Contracting Agency: Department of the Army
Award ID: W81XWH19P0117 (P000002)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $58,891.06
Date Signed: 9/14/20
Contract Period: 9/10/19-9/15/21

d. Contracting Agency: Department of the Army
Award ID: W81XWH19P0117 (P000003)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $60,459.07
Date Signed: 8/6/21
Contract Period: 9/10/19-9/15/22

e. Contracting Agency: Department of the Navy
Award ID: N0060422F4004
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $79,613.61
Date Signed: 1/13/22
Contract Period: 1/7/22-1/6/23

34

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    f.  Contracting Agency: Department of the Navy
        Award ID: M0026421F0337
        Entity Legal Business Name: Software Information Resource Corp.
        Action Obligation: $20,255.36
        Date Signed: 9/14/21
        Contract Period: 9/14/21-9/30/22

    g.  Contracting Agency: Washington Headquarters Services (WHS)
        Award ID: HQ003419F0147
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $13,603.13
        Date Signed: 3/8/19
        Contract Period: 3/5/19-9/25/19

    h.  Contracting Agency: Washington Headquarters Services (WHS)
        Award ID: HQ003421F0493
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $94,734.71
        Date Signed: 9/27/21
        Contract Period: 9/27/21-9/9/22

83.    Based on the FPDS database, the Department of Health and Human Services has the following contracts for DocuSign services:

    a.  Contracting Agency: Centers for Medicare and Medicaid Services
        Award ID: 75FCMC19F0065 (P00012)
        Entity Legal Business Name: Incentive Technology Group, LLC
        Action Obligation: $167,233.80
        Date Signed: 8/26/21
        Contract Period: 8/1/19-7/31/22

    b.  Contracting Agency: Food and Drug Administration
        Award ID: 75F40119F80221
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $26,305.42
        Date Signed: 7/18/19
        Contract Period: 7/18/19-7/18/20

    c.  Contracting Agency: Health Resources and Services Administration
        Award ID: 75R60220F80020
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $88,592.91
        Date Signed: 12/3/19
        Contract Period: 12/4/19-8/21/20

    d.  Contracting Agency: Health Resources and Services Administration
        Award ID: 75R60220F80054
        Entity Legal Business Name: Carahsoft Technology Corporation

35

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $1,183,334.00
Date Signed: 4/21/20
Contract Period: 4/22/20-4/21/21

e. Contracting Agency: Health Resources and Services Administration
Award ID: 75R60220F80054 (P00001)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $817,917.60
Date Signed: 6/4/20
Contract Period: 4/22/20-4/21/21

f. Contracting Agency: Health Resources and Services Administration
Award ID: 75R60222F80082
Entity Legal Business Name: GOVSMART, Inc.
Action Obligation: $121,551.66
Date Signed: 7/25/22
Contract Period: 7/26/22-7/25/23

g. Contracting Agency: Health Resources and Services Administration
Award ID: 75R60221F80087
Entity Legal Business Name: Software Information Resource Corp.
Action Obligation: $111,414.80
Date Signed: 7/22/21
Contract Period: 7/26/21-7/25/22

h. Contracting Agency: Health Resources and Services Administration
Award ID: HHSH250201600047W
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $38,212.00
Date Signed: 8/3/16
Contract Period: 8/11/16-8/10/17

i. Contracting Agency: Health Resources and Services Administration
Award ID: HHSH250201600047W (1)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $0
Date Signed: 8/11/16
Contract Period: 8/22/17-8/21/17

j. Contracting Agency: Health Resources and Services Administration
Award ID: HHSH250201600047W (2)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $28,512.00
Date Signed: 8/7/17
Contract Period: 8/22/17-8/21/18

k. Contracting Agency: Health Resources and Services Administration
Award ID: HHSH250201600047W (3)
Entity Legal Business Name: Carahsoft Technology Corporation

36

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $28,512.00
Date Signed: 5/22/18
Contract Period: 8/22/18-8/21/19

l.   Contracting Agency: Health Resources and Services Administration
     Award ID: HHSH250201600047W (P00004)
     Entity Legal Business Name: Carahsoft Technology Corporation
     Action Obligation: $0
     Date Signed: 9/17/20
     Contract Period: 8/11/16-8/21/19

m.  Contracting Agency: Health Resources and Services Administration
     Award ID: 75R60219F80051
     Entity Legal Business Name: Carahsoft Technology Corporation
     Action Obligation: $33,873.49
     Date Signed: 8/20/19
     Contract Period: 8/20/19-8/21/20

n.   Contracting Agency: Health Resources and Services Administration
     Award ID: 75R60219F80051 (P00001)
     Entity Legal Business Name: Carahsoft Technology Corporation
     Action Obligation: $0
     Date Signed: 2/26/20
     Contract Period: 8/20/19-8/21/20

o.   Contracting Agency: Health Resources and Services Administration
     Award ID: 75R60220F80074
     Entity Legal Business Name: Countertrade Products, Inc.
     Action Obligation: $2,713,247.26
     Date Signed: 6/12/20
     Contract Period: 6/12/20-4/21/21

p.   Contracting Agency: Health Resources and Services Administration
     Award ID: 75R60220F80074 (P00001)
     Entity Legal Business Name: Countertrade Products, Inc.
     Action Obligation: $42,255.51
     Date Signed: 10/28/20
     Contract Period: 6/12/20-4/21/21

q.   Contracting Agency: Health Resources and Services Administration
     Award ID: 75R60221F80042
     Entity Legal Business Name: New Tech Solutions, Inc.
     Action Obligation: $50,500.00
     Date Signed: 3/31/21
     Contract Period: 4/1/21-3/31/22

r.   Contracting Agency: Health Resources and Services Administration
     Award ID: 75R60220F80105
     Entity Legal Business Name: New Tech Solutions, Inc.

37

Action Obligation: $59,515.64
Date Signed: 8/21/20
Contract Period: 8/22/20-8/21/21

s.  Contracting Agency: Health Resources and Services Administration
   Award ID: 75R60221F80039
   Entity Legal Business Name: Countertrade Products, Inc.
   Action Obligation: $4,979.447.65
   Date Signed: 4/8/21
   Contract Period: 4/12/21-4/11/22

t.  Contracting Agency: Health Resources and Services Administration
   Award ID: 75R60221F80039 (P00001)
   Entity Legal Business Name: Countertrade Products, Inc.
   Action Obligation: $1,085,000.84
   Date Signed: 4/11/22
   Contract Period: 4/12/21-4/11/22

u.  Contracting Agency: Indian Health Service
   Award ID: 75H70321F80008
   Entity Legal Business Name: Carahsoft Technology Corporation
   Action Obligation: $14,365.39
   Date Signed: 8/6/21
   Contract Period: 8/5/21-8/31/22

v.  Contracting Agency: Indian Health Service
   Award ID: 75H70622P00462
   Entity Legal Business Name: Communications Professionals Inc.
   Action Obligation: $14,861.01
   Date Signed: 4/19/22
   Contract Period: 4/19/22-4/30/23

w.  Contracting Agency: Indian Health Service
   Award ID: 75H70422P00052
   Entity Legal Business Name: Affigent, LLC
   Action Obligation: $38,260.34
   Date Signed: 9/20/22
   Contract Period: 9/20/22-9/25/23

x.  Contracting Agency: National Institutes of Health
   Award ID: HHSN261201800034PC
   Entity Legal Business Name: DocuSign, Inc.
   Action Obligation: $3,522.00
   Date Signed: 10/27/17
   Contract Period: 10/27/17-10/27/17

y.  Contracting Agency: National Institutes of Health
   Award ID: 75N93021F00297
   Entity Legal Business Name: FNH, Inc.

38

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $21,600.00
Date Signed: 8/16/21
Contract Period: 8/16/21-4/25/22

z.   Contracting Agency: National Institutes of Health
Award ID: 75N93021F00175
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $20,920.00
Date Signed: 4/13/21
Contract Period: 4/13/21-4/25/22

aa.  Contracting Agency: National Institutes of Health
Award ID: 75N93022F00281
Entity Legal Business Name: FSR Consulting LLC
Action Obligation: $15,375.00
Date Signed: 7/26/22
Contract Period: 8/1/22-4/25/23

bb.  Contracting Agency: National Institutes of Health
Award ID: 75N93022F00176
Entity Legal Business Name: FSR Consulting LLC
Action Obligation: $41,440.00
Date Signed: 4/15/22
Contract Period: 4/15/22-4/25/23

cc.  Contracting Agency: National Institutes of Health
Award ID: 75N93018F00172
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $13,258.27
Date Signed: 5/31/18
Contract Period: 6/1/18-5/31/19

dd.  Contracting Agency: National Institutes of Health
Award ID: 75N93020F00186
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $27,923.39
Date Signed: 7/23/20
Contract Period: 7/27/20-7/26/21

ee.  Contracting Agency: National Institutes of Health
Award ID: 75N98B21F20001
Entity Legal Business Name: Countertrade Products, Inc.
Action Obligation: $5,484.58
Date Signed: 8/4/21
Contract Period: 8/9/21-8/8/22

ff.  Contracting Agency: National Institutes of Health
Award ID: 75N9B22P00046
Entity Legal Business Name: Carahsoft Technology Corporation

39

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $14,192.83
Date Signed: 5/31/22
Contract Period: 5/31/22-5/30/23

gg. Contracting Agency: National Institutes of Health
Award ID: 75N94022F00014
Entity Legal Business Name: IT1 Source LLC
Action Obligation: $33,096.25
Date Signed: 8/18/22
Contract Period: 9/18/22-9/18/23

hh. Contracting Agency: National Institutes of Health
Award ID: 75N93021F00175 (P00001)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $0.00
Date Signed: 09/29/22
Contract Period: 4/13/21-9/29/22

ii.  Contracting Agency: National Institutes of Health
Award ID: 75N93020F00186 (P00001)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $0
Date Signed: 9/29/22
Contract Period: 7/27/20-9/29/22

jj.  Contracting Agency: Office of the Assistant Secretary for Administration (ASA)
Award ID: 75P00121F80131 (P00001)
Entity Legal Business Name: FNH, Inc.
Action Obligation: $35,217.79
Date Signed: 6/17/22
Contract Period: 6/22/21-6/22/23

kk. Contracting Agency: Office of the Assistant Secretary for Administration (ASA)
Award ID: 75P00121F80131
Entity Legal Business Name: FNH, Inc.
Action Obligation: $35,217.79
Date Signed: 6/22/21
Contract Period: 6/22/21-6/22/22

ll.  Contracting Agency: Office of the Assistant Secretary for Administration (ASA)
Award ID: 75P00121F80020
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $25,990.20
Date Signed: 12/8/20
Contract Period: 12/8/20-10/25/21

mm.     Contracting Agency: Office of the Assistant Secretary for Administration (ASA)
Award ID: 75P00122F80042

40

    Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $31,897.06
Date Signed: 2/15/22
Contract Period: 2/16/22-2/14/23

nn. Contracting Agency: Office of the Assistant Secretary for Administration (ASA)
    Award ID: 75P00121F80207
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $25,692.72
    Date Signed: 9/17/21
    Contract Period: 9/23/21-9/22/22

oo. Contracting Agency: Office of the Assistant Secretary for Administration (ASA)
    Award ID: 75P00122F80191
    Entity Legal Business Name: Carahsoft Technology Corporation
    Action Obligation: $24,722.95
    Date Signed: 9/15/22
    Contract Period: 9/23/22-9/22/23

pp. Contracting Agency: Office of the Inspector General
    Award ID: 75040119F80029
    Entity Legal Business Name: Software Information Resource Corp.
    Action Obligation: $169,212.63
    Date Signed: 9/16/19
    Contract Period: 9/19/19-9/18/20

84.  Based on the FPDS database, the Department of the Treasury has the following contracts for DocuSign services:

a. Contracting Agency: Bureau of the Engraving and Printing
    Award ID: 2031ZB22F00062
    Entity Legal Business Name: Lancer Information Solutions, LLC
    Action Obligation: $208,000.00
    Date Signed: 8/4/22
    Contract Period: 8/15/22-8/14/23

b. Contracting Agency: Bureau of the Fiscal Service
    Award ID: 2033H621F00101
    Entity Legal Business Name: AccessAgility LLC
    Action Obligation: $71,599.71
    Date Signed: 2/25/21
    Contract Period: 3/1/21-1/31/22

c. Contracting Agency: Bureau of the Fiscal Service
    Award ID: 2033H622F00064
    Entity Legal Business Name: Lancer Information Solutions, LLC
    Action Obligation: $85,283.35
    Date Signed: 1/27/22
    Contract Period: 2/1/22-1/31/23

41

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    d.   Contracting Agency: Internal Revenue Service
        Award ID: 2032H521F00270
        Entity Legal Business Name: FCN, Inc.
        Action Obligation: $146,306.88
        Date Signed: 3/24/21
        Contract Period: 3/24/21-3/23/22

    e.   Contracting Agency: Internal Revenue Service
        Award ID: 2033H522F00221
        Entity Legal Business Name: Lancer Information Solutions, LLC
        Action Obligation: $144,835.00
        Date Signed: 3/15/22
        Contract Period: 3/23/22-3/8/23

    f.   Contracting Agency: Internal Revenue Service
        Award ID: 2033H522F00221 (P00002)
        Entity Legal Business Name: Lancer Information Solutions, LLC
        Action Obligation: $0.00
        Date Signed: 3/28/22
        Contract Period: 3/23/22-3/8/23

    g.   Contracting Agency: Office of the Comptroller of the Currency
        Award ID: 2031JW22F00052
        Entity Legal Business Name: Deloitte Consulting LLP
        Action Obligation: $329,287.13
        Date Signed: 6/28/22
        Contract Period: 33/4/22-3/3/23

85.    Based on the FPDS database, the Department of Veterans Affairs has the following contracts for DocuSign services:

    a.   Contracting Agency: Department of Veterans Affairs
        Award ID: 36C26020F0647
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $22,112.00
        Date Signed: 8/18/20
        Contract Period: 8/28/20-8/27/21

    b.   Contracting Agency: Department of Veterans Affairs
        Award ID: 36C10B21F0063
        Entity Legal Business Name: Regan Technologies Corporation
        Action Obligation: $657,266.01
        Date Signed: 2/11/21
        Contract Period: 2/14/21-2/13/22

    c.   Contracting Agency: Department of Veterans Affairs
        Award ID: 36C26021F0578
        Entity Legal Business Name: Carahsoft Technology Corporation

42

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $52,139.00
Date Signed: 8/9/21
Contract Period: 8/28/21-8/27/22

    d.   Contracting Agency: Department of Veterans Affairs
        Award ID: VA11817F1812
        Entity Legal Business Name: Thundercat Technology, LLC
        Action Obligation: $455,877.77
        Date Signed: 1/31/17
        Contract Period: 1/31/17-1/26/18

    e.   Contracting Agency: Department of Veterans Affairs
        Award ID: VA11817F1812 (P00001)
        Entity Legal Business Name: Thundercat Technology, LLC
        Action Obligation: $447,340.00
        Date Signed: 1/24/18
        Contract Period: 1/31/17-1/26/18

    f.   Contracting Agency: Department of Veterans Affairs
        Award ID: VA11817F1812 (P00002)
        Entity Legal Business Name: Thundercat Technology, LLC
        Action Obligation: $469,760.00
        Date Signed: 12/19/18
        Contract Period: 1/31/19-1/30/20

    g.   Contracting Agency: Department of Veterans Affairs
        Award ID: VA11817F1812 (P00003)
        Entity Legal Business Name: Thundercat Technology, LLC
        Action Obligation: $685,524.22
        Date Signed: 1/31/20
        Contract Period: 1/31/17-1/30/21

    h.   Contracting Agency: Department of Veterans Affairs
        Award ID: VA11817F1812 (P00004)
        Entity Legal Business Name: Thundercat Technology, LLC
        Action Obligation: $0.00
        Date Signed: 2/1/21
        Contract Period: 1/31/17-2/13/21

    i.   Contracting Agency: Department of Veterans Affairs
        Award ID: VA11817F1812 (P00005)
        Entity Legal Business Name: Thundercat Technology, LLC
        Action Obligation: -$24,532.00
        Date Signed: 5/14/21
        Contract Period: 1/31/17-1/26/18

    j.   Contracting Agency: Department of Veterans Affairs
        Award ID: 36C10B21F0063 (P00001)
        Entity Legal Business Name: Regan Technologies Corporation

43

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Action Obligation: $464,000.00
Date Signed: 4/14/21
Contract Period: 2/14/21-2/13/22

k.  Contracting Agency: Department of Veterans Affairs
Award ID: 36C10B21F0063 (P00002)
Entity Legal Business Name: Regan Technologies Corporation
Action Obligation: $0
Date Signed: 7/14/21
Contract Period: 2/14/21-2/13/22

l.  Contracting Agency: Department of Veterans Affairs
Award ID: 36C10B21F0063 (P00003)
Entity Legal Business Name: Regan Technologies Corporation
Action Obligation: $770,622.38
Date Signed: 2/11/22
Contract Period: 2/14/21-2/13/23

m.  Contracting Agency: Department of Veterans Affairs
Award ID: 36C10B21F0063 (P00004)
Entity Legal Business Name: Regan Technologies Corporation
Action Obligation: $50,630.00
Date Signed: 2/24/22
Contract Period: 2/14/21-2/14/22

n.  Contracting Agency: Department of Veterans Affairs
Award ID: 36C26022F0421
Entity Legal Business Name: V3Gate, LLC
Action Obligation: $94,700.00
Date Signed: 8/3/22
Contract Period: 8/28/22-8/27/23

86.  Based on the FPDS database, the General Services Administration has the following contracts for DocuSign services:

a.  Contracting Agency: Office of Administrative Services
Award ID: 47HAA022F0127
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $245,181.47
Date Signed: 6/24/22
Contract Period: 6/23/22-6/17/23

b.  Contracting Agency: Office of Administrative Services
Award ID: 47HAA019F0175 (PS00008)
Entity Legal Business Name: Carahsoft Technology Corporation
Action Obligation: $40,197.78
Date Signed: 1/28/22
Contract Period: 6/17/19-6/16/22

44

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

c. Contracting Agency: Public Buildings Service
Award ID: GS09P13KSM0016
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $15,000.00
Date Signed: 2/14/13
Contract Period: 2/14/13-3/15/14

d. Contracting Agency: Public Buildings Service
Award ID: GS09P14KSM0012
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $1,250.00
Date Signed: 3/12/14
Contract Period: 3/12/14-4/14/14

e. Contracting Agency: Public Buildings Service
Award ID: GS09P14KSM0012 (PA01)
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $0.00
Date Signed: 8/13/14
Contract Period: 4/13/14-8/14/14

f. Contracting Agency: Public Buildings Service
Award ID: GS09P12KXP0008
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $29,495.00
Date Signed: 1/3/12
Contract Period: 1/3/12-9/30/12

g. Contracting Agency: Public Buildings Service
Award ID: GS09P12KXP0008 (PA01)
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $0.00
Date Signed: 1/3/12
Contract Period: 1/3/12-9/30/12

h. Contracting Agency: Public Buildings Service
Award ID: GS09P12KXP0008 (PA02)
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $0.00
Date Signed: 1/12/12
Contract Period: 1/12/12-9/30/12

i. Contracting Agency: Public Buildings Service
Award ID: GS09P12KXP0008 (PS03)
Entity Legal Business Name: DocuSign Inc.
Action Obligation: $0.00
Date Signed: 9/12/12
Contract Period: 8/16/12-1/2/13

45

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

j.   Contracting Agency: Public Buildings Service
     Award ID: GS09P12KXP0008 (PS04)
     Entity Legal Business Name: DocuSign Inc.
     Action Obligation: $0.00
     Date Signed: 1/2/13
     Contract Period: 1/2/12-3/15/13

k.   Contracting Agency: Public Buildings Service
     Award ID: GS09P14KSM0018
     Entity Legal Business Name: DocuSign Inc.
     Action Obligation: $15,000.00
     Date Signed: 4/9/14
     Contract Period: 4/2/14-4/13/15

l.   Contracting Agency: Public Buildings Service
     Award ID: GS09P15KSC0032
     Entity Legal Business Name: DocuSign Inc.
     Action Obligation: $11,745.00
     Date Signed: 4/13/15
     Contract Period: 4/14/15-4/15/16

m.   Contracting Agency: Public Buildings Service
     Award ID: GS09P16KSP7024
     Entity Legal Business Name: DocuSign Inc.
     Action Obligation: $14,878.13
     Date Signed: 4/13/16
     Contract Period: 4/14/16-4/13/17

n.   Contracting Agency: Public Buildings Service
     Award ID: GS09P16KSP7024 (PA04)
     Entity Legal Business Name: DocuSign Inc.
     Action Obligation: $4,270.00
     Date Signed: 6/21/17
     Contract Period: 4/14/16-4/13/17

o.   Contracting Agency: Public Buildings Service
     Award ID: GS09P16KSP7024 (PA05)
     Entity Legal Business Name: DocuSign Inc.
     Action Obligation: $2,450.00
     Date Signed: 8/9/17
     Contract Period: 4/14/16-4/13/17

p.   Contracting Agency: Public Buildings Service
     Award ID: 47PK1221C0017
     Entity Legal Business Name: Construction Corp.
     Action Obligation: $55,668.52
     Date Signed: 4/22/21
     Contract Period: 4/22/21-7/1/21

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

87. Based on the FPDS database, U.S. Agency for International Development ("USAID") has the following contracts for DocuSign services:

    a. Contracting Agency: U.S. Agency for International Development
        Award ID: 72MC1018M000016 (P00005)
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $371,653.36
        Date Signed: 6/5/22
        Contract Period: 6/22/18-6/21/23

    b. Contracting Agency: U.S. Agency for International Development
        Award ID: 72MC1018M000016 (P00004)
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $363,586.08
        Date Signed: 5/12/21
        Contract Period: 6/22/18-6/21/23

    c. Contracting Agency: U.S. Agency for International Development
        Award ID: 72MC1018M000016 (P00003)
        Entity Legal Business Name: Carahsoft Technology Corporation
        Action Obligation: $0.00
        Date Signed: 8/11/20
        Contract Period: 6/22/18-6/21/23

88. Based on the FPDS database, the Department of Education has the following contract for DocuSign services:

    a. Contracting Agency: Department of Education
        Award ID: 91003119F0003
        Entity Legal Business Name: Accenture Federal Services LLC
        Action Obligation: $29,799.00
        Date Signed: 5/3/21
        Contract Period: 2/20/19-2/19/24

89. Based on the FPDS database, the Department of Energy has the following contracts for DocuSign services:

    a. Contracting Agency: Department of Energy
        Award ID: 89243320FFE400229
        Entity Legal Business Name: Carahsoft Technology Corp.
        Action Obligation: $11,443.60
        Date Signed: 7/30/20
        Contract Period: 7/30/20-7/30/21

    b. Contracting Agency: Department of Energy

47

Award ID: 89243518FFE400037
Entity Legal Business Name: August Schell Enterprises, Inc.
Action Obligation: $6,146.72
Date Signed: 9/27/18
Contract Period: 9/27/18-9/29/19

c. Contracting Agency: Department of Energy
Award ID: 89243321FFE400315
Entity Legal Business Name: Carahsoft Technology Corp.
Action Obligation: $11,440.00
Date Signed: 7/23/21
Contract Period: 7/31/21-7/30/22

d. Contracting Agency: Department of Energy
Award ID: 89243322FFE400373
Entity Legal Business Name: Carahsoft Technology Corp.
Action Obligation: $11,440.00
Date Signed: 4/11/22
Contract Period: 7/31/22-7/30/22

90. Based on the FPDS database, the Department of the Homeland Security has the following contracts for DocuSign services:

a. Contracting Agency: Federal Emergency Management Agency
Award ID: 70FA3022F00000138
Entity Legal Business Name: Carahsoft Technology Corp.
Action Obligation: $9,999.95
Date Signed: 3/17/22
Contract Period: 3/25/22-3/24/23

b. Contracting Agency: Transportation Security Administration
Award ID: HSTS0116JCRL016
Entity Legal Business Name: FS Partners LLP
Action Obligation: $113,049.63
Date Signed: 9/18/18
Contract Period: 9/22/16-9/20/19

91. Based on the FPDS database, the Department of the Housing and Urban Development has the following contracts for DocuSign services:

a. Contracting Agency: Department of Housing and Urban Development
Award ID: 86615321F00006
Entity Legal Business Name: Petrosys Solutions Inc.
Action Obligation: $1,521,102.83
Date Signed: 2/12/21
Contract Period: 2/15/21-2/14/26

48

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

b.  Contracting Agency: Department of Housing and Urban Development
    Award ID: 86615321F00006 (P00001)
    Entity Legal Business Name: Petrosys Solutions Inc.
    Action Obligation: $0.00
    Date Signed: 3/1/21
    Contract Period: 2/15/21-2/14/26

c.  Contracting Agency: Department of Housing and Urban Development
    Award ID: 86615321F00006 (P00002)
    Entity Legal Business Name: Petrosys Solutions Inc.
    Action Obligation: $0.00
    Date Signed: 10/28/21
    Contract Period: 2/15/21-2/14/26

d.  Contracting Agency: Department of Housing and Urban Development
    Award ID: 86615321F00006 (P00003)
    Entity Legal Business Name: Petrosys Solutions Inc.
    Action Obligation: $1,645,127.18
    Date Signed: 1/26/22
    Contract Period: 2/15/21-2/14/23

e.  Contracting Agency: Department of Housing and Urban Development
    Award ID: 86615321F00006 (P00005)
    Entity Legal Business Name: Petrosys Solutions Inc.
    Action Obligation: $0
    Date Signed: 6/22/22
    Contract Period: 2/15/21-2/14/23

92.  Based on the FPDS database, the Department of the Labor has the following contracts for DocuSign services:

a.  Contracting Agency: Office of the Assistant Secretary for Administration and Management
    Award ID: 1605TB22F00089
    Entity Legal Business Name: AccessAgility LLC
    Action Obligation: $66,622.97
    Date Signed: 6/29/22
    Contract Period: 6/29/22-6/29/23

b.  Contracting Agency: Office of the Assistant Secretary for Administration and Management
    Award ID: 1605TB20F00035
    Entity Legal Business Name: AccessAgility LLC
    Action Obligation: $68,572.86
    Date Signed: 6/29/20
    Contract Period: 6/29/20-6/29/21

49

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

c. Contracting Agency: Office of the Assistant Secretary for Administration and Management
Award ID: 1605TB21F00098
Entity Legal Business Name: Enterprise Technology Solutions, Inc.
Action Obligation: $4,754.13
Date Signed: 6/28/21
Contract Period: 7/1/21-6/30/22

d. Contracting Agency: Office of the Assistant Secretary for Administration and Management
Award ID: 1605TB21F00098 (P00001)
Entity Legal Business Name: Enterprise Technology Solutions, Inc.
Action Obligation: $0.00
Date Signed: 6/28/21
Contract Period: 7/1/21-6/29/22

93. Based on the FPDS database, the National Labor Relations Board has the following contract for DocuSign services:

a. Contracting Agency: National Labor Relations Board
Award ID: 63NLRB22F0062
Entity Legal Business Name: Carahsoft Technology Corp.
Action Obligation: $235,394.73
Date Signed: 9/13/22
Contract Period: 9/26/22-9/25/23

94. Based on the FPDS database, the Nuclear Regulatory Commission has the following contract for DocuSign services:

a. Contracting Agency: Nuclear Regulatory Commission
Award ID: 31310021F0112
Entity Legal Business Name: Software Information Resource Corp.
Action Obligation: $56,425.95
Date Signed: 8/25/21
Contract Period: 10/1/21-9/30/22

b. Contracting Agency: Nuclear Regulatory Commission
Award ID: 31310022F0131
Entity Legal Business Name: New Tech Solutions, Inc.
Action Obligation: $67,896.51
Date Signed: 9/22/22
Contract Period: 10/1/22-9/30/23

95. Based on the FPDS database, the Smithsonian Institution has the following contracts for DocuSign services:

50

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

    a.  Contracting Agency: Smithsonian Institution
        Award ID: 33314522F00467602
        Entity Legal Business Name: Carahsoft Technology Corp.
        Action Obligation: $143,326.90
        Date Signed: 12/15/21
        Contract Period: 12/15/21-12/14/22

    b.  Contracting Agency: Smithsonian Institution
        Award ID: 33314521F00456117
        Entity Legal Business Name: Carahsoft Technology Corp.
        Action Obligation: $104,821.96
        Date Signed: 4/6/21
        Contract Period: 4/6/21-4/5/22

96.     Based on the FPDS database, the Department of State has the following contract for DocuSign services:

    a.  Contracting Agency: Department of State
        Award ID: 19AQMM21F4648
        Entity Legal Business Name: Carahsoft Technology Corp.
        Action Obligation: $85,061.93
        Date Signed: 9/28/21
        Contract Period: 9/30/21-7/14/22

    b.  Contracting Agency: Department of State
        Award ID: 19AQMM22F3430
        Entity Legal Business Name: Carahsoft Technology Corp.
        Action Obligation: $39,206.15
        Date Signed: 9/30/22
        Contract Period: 9/30/21-7/14/22

97.     Based on the FPDS database, the Department of Transportation has the following contracts for DocuSign services:

    a.  Contracting Agency: Federal Motor Carrier Safety Administration
        Award ID: 693JJ422F000015
        Entity Legal Business Name: Aurora Systems Consulting, Inc.
        Action Obligation: $19,000.86
        Date Signed: 3/16/22
        Contract Period: 3/16/22-3/19/23

    b.  Contracting Agency: Federal Aviation Administration
        Award ID: 697DCK21F01246
        Entity Legal Business Name: Microtechnologies LLC
        Action Obligation: $389,056.60
        Date Signed: 9/1/21
        Contract Period: 9/1/21-10/23/21

51

    c.  Contracting Agency: Federal Aviation Administration
         Award ID: 697DCK22F01362
         Entity Legal Business Name: Microtechnologies LLC
         Action Obligation: $84,792.66
         Date Signed: 7/14/22
         Contract Period: 7/14/22-7/14/23

    d.  Contracting Agency: Federal Aviation Administration
         Award ID: 697DCK22F01596
         Entity Legal Business Name: Microtechnologies LLC
         Action Obligation: $289,590.62
         Date Signed: 9/16/22
         Contract Period: 9/16/22-9/9/23

    e.  Contracting Agency: Federal Aviation Administration
         Award ID: 697DCK22F01827
         Entity Legal Business Name: Microtechnologies LLC
         Action Obligation: $169,215.13
         Date Signed: 9/21/22
         Contract Period: 9/21/22-9/28/23

98.    Additionally, as discerned from a response to a FOIA request, the Department of Treasury contracted with AccessAgility, LLC, an authorized seller of DocuSign products and services, on February 25, 2021, to purchase Salesforce DocuSign CLM Licenses, which included DocuSign eSignature Enterprise Pro with FedRAMP, DocuSign Connector, FedRAMP Environment, and Enterprise Premier Support with FedRAMP for the period March 1, 2021, to January 31, 2022, for a total contract price of $71,599.71.

99.    The Department of Treasury also contracted with Lancer Information Solutions LLC, an authorized seller of DocuSign products and services, on January 27, 2022, to purchase Salesforce DocuSign CLM Licenses for the period February 1, 2022, to January 31, 2023, for a total contract price of $85,283.35.

100.    The Internal Revenue Service, as part of the Department of Treasury, provided additional contract information in a FOIA response. The Internal Revenue Service contracted under contract number NNG15SD29B with Lancer Information Solutions, LLC on March 23, 2022, to purchase a DocuSign eSignature Subscription, including eSignature Enterprise Pro –

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

FedRAMP, DocuSign Salesforce Connector, and Enterprise Premier Support – FedRAMP, for the period March 23, 2022, to March 8, 2023, for a contract price of $144,835.00.

101. The Internal Revenue Service also contracted under contract number NNG15SC71B with FCN, Inc. on March 24, 2021, to purchase DocuSign services, including Enterprise Pro FedRAMP Envelopes and Support, DocuSign Connector Users, Enterprise Premier Support – FedRAMP, and professional services, for the period March 24, 2021, to March 23, 2022, for a contract price of $146,306.88.

102. There may be additional federal government contracts that provide for the use of DocuSign services that were not ascertainable through a search of the FPDS database for "DocuSign" or through materials made available to date in response to FOIA requests.

### d. Known New York State Contracts

103. New York State's Office of the State Comptroller created Open Book, a searchable database of New York State contracts, "as [a] way to make government more transparent" and to "see who is doing business with the State."[38] That database includes "[a]ll State agency contracts, in effect 4/1/12 or later, which includes contracts approved by the Office of the State Comptroller (OSC) and those that don't require OSC approval."[39] Open Book also includes "State authority contracts historically subject to approval by OSC (primarily for the Thruway Authority and the Long Island Power Authority only)" and "State Authority contracts reviewed or filed with OSC after October 1, 2015. These transactions are subject to OSC review or filing as result of the Public Authorities Reform Act of 2009."[40]

---

[38] *Open Book New York*, *Comptroller's Review of State Contracts*, Office of the State Comptroller, https://wwe2.osc.state.ny.us/transparency/contracts/contractoverview.cfm (last visited Oct. 26, 2022)

[39] *Open Book New York, NYS Contract Search*, Office of the State Comptroller, https://wwe2.osc.state.ny.us/transparency/contracts/contractsearch.cfm (last visited Oct. 26, 2022)

[40] *Id.*

104.    A    search    of    the    Open    Book    database (https://wwe2.osc.state.ny.us/transparency/contracts/contractsearch.cfm) for contract number PM68140 (as provided in a response to a FOIL request) produces 1 result and indicates that the contract is an umbrella contract with a current contract amount of $11,798,000.00.

105.    The Commissioner of the Office of General Services, on behalf of the People of the State of New York, contracted with DocuSign, Inc. on August 8, 2018, under Group 73600, Award 22802, Contract Number PM68140 beginning August 6, 2018, with an extension through November 29, 2022.

106.    There may be additional New York State government contracts that provide for the use of DocuSign services that were not ascertainable through a search of the New York State Comptroller's database or through materials made available to date in response to FOIL requests.

*e.    Known California Government Contracts*

107.    DocuSign, Inc. has an agreement with the State of California to provide DocuSign Cloud Services through DocuSign's authorized distributor Carahsoft Technology Corp. and its affiliated resellers. The resellers are Solutions Simplified, Ablegov, Inc., Advanced Technical Solutions, Inc., Allied Network Solutions, Inc., and Taborda Solutions.

108.    Pursuant to Executive Order B-12-11, agencies under the direct executive authority of the Governor of California must provide information on their contracts through the eProcurement    website    (https://caleprocure.ca.gov/pages/index.aspx)    maintained    by    the Department of General Services.[41]

---

[41] *California State Government Marketplace*, Cal eProcure, https://www.ca.gov/archive/gov39/2011/10/09/news17274/index.html (last visited Oct. 27, 2022)

109.    A search of the Cal eProcure, State Leveraged Procurement Agreements website (https://caleprocure.ca.gov/pages/LPASearch/lpa-search.aspx) for the term "DocuSign" produces 5 results, indicating that the Department of General Services contracts with DocuSign. The list of contracts generated on 10/25/22 is attached as Exhibit C.

110.    Based on the Cal eProcure database, the State of California has the following contracts for DocuSign services:

a.  Agency: Department of General Services – Statewide Procurement
    Contract ID: SLP-21-70-0027I
    Description: DocuSign Software
    Supplier: Allied Network Solutions Inc.
    Contract Period: 5/22/21-5/21/24

b.  Agency: Department of General Services – Statewide Procurement
    Contract ID: SLP-21-70-0063E
    Description: DocuSign Software
    Supplier: Taborda Solutions Inc.
    Contract Period: 5/22/21-5/21/24

c.  Agency: Department of General Services – Statewide Procurement
    Contract ID: SLP-21-70-0090A
    Description: DocuSign Software
    Supplier: Ablegov Inc.
    Contract Period: 5/22/21-5/21/24

d.  Agency: Department of General Services – Statewide Procurement
    Contract ID: SLP-21-70-0139L
    Description: DocuSign Software
    Supplier: Advanced Technical Solutions
    Contract Period: 5/25/21-5/21/24

e.  Agency: Department of General Services – Statewide Procurement
    Contract ID: SLP-21-70-0181N
    Description: DocuSign Software
    Supplier: Solutions Simplified
    Contract Period: 5/22/21-5/21/24

111.    From the Cal eProcure website, there is another database, the FI$Cal State Contract & Procurement Registration System ("SCPRS"), for past purchases by the State of California. More specifically, a search of the FI$Cal SCPRS (https://suppliers.fiscal.ca.gov/psc/psfpd1/SUPPLIER/ERP/c/ZZ_PO.ZZ_SCPRS1_CMP.GBL?F

olderPath=PORTAL_ROOT_OBJECT.ZZ_FISCAL_SCPRS.ZZ_SCPRS1_CMP_GBL&IsFolder=false&IgnoreParamTempl=FolderPath%2cIsFolder) for the term "DocuSign" produces 110 results. The list of contracts generated on 10/25/22 is attached as Exhibit D.

112.    Based on the Cal eProcure, FI$Cal SCPRS database, the State of California has the following contracts for DocuSign services:

    a.  Agency: Business & Economic Development
        Contract ID: SLP-21-70-0181N
        Description: DocuSign Business Pro for Gov
        Supplier: Solutions Simplified
        Current Contract Amount: $9,385.00
        Contract Period: 3/7/22-2/1/23

    b.  Agency: Business & Economic Development
        Contract ID: SLP-18-70-0090R
        Description: DocuSign Business Pro for Gov - Envelopes
        Supplier: Ablegov Inc
        Current Contract Amount: $3,013,00
        Contract Period: 8/5/20-8/16/21

    c.  Agency: Business & Economic Development
        Contract ID: SLP-18-70-0181J
        Description: DocuSign Business Pro
        Supplier: Solutions Simplified
        Current Contract Amount: $14,674.00
        Contract Period: 2/17/21-unknown

    d.  Agency: CA Gambling Control Commission
        Contract ID: SLP-21-70-0181N
        Description: Esignature Enterprise Pro with FedRamp Envelope DocuSign
        Supplier: Solutions Simplified
        Current Contract Amount: $15,549.00
        Contract Period: 9/22/21-9/21/22

    e.  Agency: CA Gambling Control Commission
        Contract ID: SLP-21-70-0027I
        Description: Docusign Enterprise Pro with FedRAMP – Envelope DocuSign
        Supplier: Allied Network Solutions Inc.
        Current Contract Amount: $14,213.00
        Contract Period: 9/26/22-9/29/23

    f.  Agency: CA Health Benefit Exchange
        Contract ID: n/a
        Description: DocuSign Platform Edition
        Supplier: Allied Network Solutions Inc.
        Current Contract Amount: $548,800.00

56

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Contract Period: 3/4/20-4/14/21

g.  Agency: CA Health Benefit Exchange
Contract ID: n/a
Description: DocuSign Software Installation, Implementation
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $49,533.75
Contract Period: 7/5/22-unknown

h.  Agency: CA Health Benefit Exchange
Contract ID: n/a
Description: DocuSign Platform Edition
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $760,000.00
Contract Period: 12/14/21-1/31/23

i.  Agency: CA Health Benefit Exchange
Contract ID: n/a
Description: DocuSign Software Installation, Implementation
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $329,161.25
Contract Period: 3/16/22-unknown

j.  Agency: CA Health Benefit Exchange
Contract ID: n/a
Description: DocuSign Software Installation, Implementation
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $355,200.00
Contract Period: 10/22/20-unknown

k.  Agency: CA Health Benefit Exchange
Contract ID: n/a
Description: DocuSign Ge. For SFDC Add-on Seat Subscriptions
Supplier: Ablegov Inc.
Current Contract Amount: $466,464.00
Contract Period: 10/18/22-1/31/23

l.  Agency: CA State Library
Contract ID: n/a
Description: DocuSign Business Pro for Government
Supplier: Ablegov Inc.
Current Contract Amount: $18,770.00
Contract Period: 5/13/22-unknown

m.  Agency: CA State Library
Contract ID: SLP-18-70-0090R
Description: DocuSign Business Pro for Government
Supplier: Ablegov Inc.
Current Contract Amount: $29,562.50
Contract Period: 5/11/21-5/24/22

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

n.  Agency: CA Student Aid Commission
    Contract ID: n/a
    Description: DocuSign eSignature Business Pro for Government
    Supplier: Advanced Technical Solutions
    Current Contract Amount: $10,013.00
    Contract Period: 12/9/20-12/14/23

o.  Agency: CAL Fire
    Contract ID: n/a
    Description: Xpertdoc E-Sign Connector User Subscription (DocuSign)
    Supplier: Xpertdoc Technologies
    Current Contract Amount: $529.80
    Contract Period: 6/29/21-6/28/22

p.  Agency: CAL Fire
    Contract ID: n/a
    Description: Xpertdoc Smart Flows E-Sign Connector User Subscription
    (DocuSign)
    Supplier: Xpertdoc Technologies
    Current Contract Amount: $518.40
    Contract Period: 6/26/20-unknown

q.  Agency: California Department of Aging
    Contract ID: SLP-21-70-139L
    Description: DocuSign Renewal
    Supplier: Advanced Technical Solutions
    Current Contract Amount: $86,907.00
    Contract Period: 11/1/21-10/31/22

r.  Agency: California Department of Aging
    Contract ID: SLP-18-70-0027H
    Description: DocuSign Platform Edition – FedRamp Moderate
    Supplier: Allied Network Solutions Inc.
    Current Contract Amount: $137,850.00
    Contract Period: 10/22/20-unknown

s.  Agency: Community Srvcs & Development
    Contract ID: n/a
    Description: DocuSign Enterprise Pro for Government
    Supplier: Ablegov Inc.
    Current Contract Amount: $12,875.00
    Contract Period: 6/8/22-unknown

t.  Agency: Community Srvcs & Development
    Contract ID: SLP-18-70-0090R
    Description: DocuSign Enterprise Pro for Government
    Supplier: Ablegov Inc.
    Current Contract Amount: $25,697.00
    Contract Period: 6/1/21-unknown

u.  Agency: Community Srvcs & Development

58

Contract ID: n/a
Description: DocuSign Enterprise Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $16,422.86
Contract Period: 5/27/20-5/26/21

v.  Agency: Department of Consumer Affairs
Contract ID: SLP-21-70-0181N
Description: DocuSign Enterprise Pro for Government
Supplier: Solutions Simplified
Current Contract Amount: $41,754.00
Contract Period: 12/29/21-12/28/22

w.  Agency: Department of Finance
Contract ID: SLP-21-70-0181N
Description: DocuSign Business Pro for Government
Supplier: Solutions Simplified
Current Contract Amount: $4,365.00
Contract Period: 3/14/22-3/13/23

x.  Agency: Department of General Services
Contract ID: SLP-18-70-0027H
Description: DocuSign Business Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $115,714.00
Contract Period: 11/1/2019-10/31/20

y.  Agency: Department of General Services
Contract ID: SLP-16-70-0181A
Description: DocuSign Software
Supplier: Solutions Simplified
Current Contract Amount: $210,700.00
Contract Period: 11/1/2017-10/31/2019

z.  Agency: Department of General Services
Contract ID: n/a
Description: DocuSign System
Supplier: Enterprise Networking Sols Inc.
Current Contract Amount: $25,200.00
Contract Period: 4/14/2017-unknown

aa. Agency: Department of Human Resources
Contract ID: SLP-21-70-0139L
Description: DocuSign Business Pro for Government
Supplier: Advanced Technical Solutions
Current Contract Amount: $8,849.25
Contract Period: 11/10/21-unknown

bb. Agency: Department of Insurance
Contract ID: n/a
Description: Software- DocuSign Business Pro for Government

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Supplier: Allied Network Solutions Inc.
Current Contract Amount: $6,240.00
Contract Period: 11/16/21-unknown

cc. Agency: Department of Motor Vehicles
Contract ID: SLP-21-70-0027I
Description: DocuSign eSignature Enterprise Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $103,950.00
Contract Period: 6/30/21-6/29/22

dd. Agency: Department of Motor Vehicles
Contract ID: SLP-18-70-0181J
Description: DocuSign Enterprise Professional for Government and Enterprise
Support
Supplier: Solutions Simplified
Current Contract Amount: $282,250.00
Contract Period: 6/30/20-6/29/21

ee. Agency: Department of Motor Vehicles
Contract ID: SLP-21-70-0181N
Description: DocuSign Enterprise for Government
Supplier: Solutions Simplified
Current Contract Amount: $92,620.00
Contract Period: 6/30/22-6/29/23

ff. Agency: Department of Public Health
Contract ID: SLP-21-70-0027I
Description: DocuSign Enterprise Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $482,000.00
Contract Period: 8/7/22-8/6/23

gg. Agency: Department of Public Health
Contract ID: SLP-16-70-0181A v0
Description: DocuSign System Automated Premium Edition
Supplier: Solutions Simplified
Current Contract Amount: $378,000.50
Contract Period: 6/15/2018-6/14/21

hh. Agency: Department of Public Health
Contract ID: SLP-16-70-0181A v1
Description: DocuSign System Automated Premium Edition
Supplier: Solutions Simplified
Current Contract Amount: $252,000.00
Contract Period: 6/15/2018-6/14/21

ii. Agency: Department of Public Health
Contract ID: SLP-21-70-0139L
Description: DocuSign Enterprise Pro Edition for SFDC
Supplier: Advanced Technical Solutions

60

Current Contract Amount: $157,730.00
Contract Period: 11/5/21-unknown

jj. Agency: Department of Public Health
Contract ID: n/a
Description: DocuSign Enterprise Pro Edition for SFDC – Seat Subscription FedRAMP Moderate
Supplier: Solutions Simplified
Current Contract Amount: $169,300.00
Contract Period: 9/7/20-8/6/21

kk. Agency: Department of Public Health
Contract ID: n/a
Description: DocuSign Enterprise Pro for Government – FedRAMP Moderate
Supplier: Solutions Simplified
Current Contract Amount: $707,200.00
Contract Period: 8/7/20-8/6/21

ll. Agency: Department of Public Health
Contract ID: SLP-21-70-0027I v0
Description: DocuSign Enterprise Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $726,750.00
Contract Period: 8/7/21-8/6/22

mm. Agency: Department of Public Health
Contract ID: SLP-21-70-27I v0
Description: DocuSign Enterprise Pro Edition for SFDC
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $154,300.00
Contract Period: 8/18/22-8/17/23

nn. Agency: Department of Public Health
Contract ID: n/a
Description: DocuSign Enterprise Pro Edition for SFDC – Seat Subscription FedRAMP Moderate DocuSign, Inc.
Supplier: Solutions Simplified
Current Contract Amount: $155,740.00
Contract Period: 12/18/20-8/17/21

oo. Agency: Department of State Hospitals
Contract ID: SLP-21-70-0181N v0
Description: Customer Success Architect – Half time per month DocuSign, Inc. Software
Supplier: Solutions Simplified
Current Contract Amount: $171,500.00
Contract Period: 6/7/22-4/26/23

pp. Agency: Department of State Hospitals
Contract ID: SLP-21-70-0181N v1
Description: Classic DocuSign Platform Offering

61

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Supplier: Solutions Simplified
Current Contract Amount: $770,170.00
Contract Period: 11/15/21-11/14/22

qq. Agency: Department of Technology
Contract ID: SLP-21-70-0027I
Description: DocuSign VHSS eSignature/Digital Signature SaaS Renewal
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $1,500,000.00
Contract Period: 11/1/21-10/31/22

rr. Agency: Department of Water Resources
Contract ID: SLP-18-70-0181J
Description: DocuSign Installation/Implementation
Supplier: Solutions Simplified
Current Contract Amount: $56,123.76
Contract Period: 8/16/2019-8/16/2019

ss. Agency: Department of Water Resources
Contract ID: SLP-18-70-0181J
Description: DocuSign Customer Success Architect
Supplier: Solutions Simplified
Current Contract Amount: $113,499.00
Contract Period: 10/30/2018-10/30/2018

tt. Agency: Department of Water Resources
Contract ID: SLP-18-70-0181J
Description: DocuSign Platform Edition
Supplier: Solutions Simplified
Current Contract Amount: $2,611,399.44
Contract Period: 4/26/2019-4/26/2019

uu. Agency: Department of Water Resources
Contract ID: SLP-16-70-0181A
Description: DocuSign System Automated Premium
Supplier: Solutions Simplified
Current Contract Amount: $1,850,625.00
Contract Period: 4/26/2016-4/26/2016

vv. Agency: Department of Water Resources
Contract ID: SLP-21-70-0181N
Description: Classic DocuSign Platform Offering
Supplier: Solutions Simplified
Current Contract Amount: $4,194,599.12
Contract Period: 1/25/22-1/25/22

ww.       Agency: Department of Child Support Services
Contract ID: SLP-21-70-0139L
Description: DocuSign Enterprise Pro with FedRAMP
Supplier: Advanced Technical Solutions
Current Contract Amount: $604,000.00

62

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Contract Period: 10/15/21-10/14/22

xx. Agency: Department of Child Support Services
Contract ID: SLP-21-70-0090A
Description: DocuSign Enterprise Pro with FedRAMP
Supplier: Ablegov Inc.
Current Contract Amount: $620,500.00
Contract Period: 10/15/22-10/14/23

yy. Agency: Department of Corrections & Rehab
Contract ID: SLP-18-70-0027H
Description: DocuSign Platform Edition
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $802,850.00
Contract Period: 2/2/21-3/29/22

zz. Agency: Department of Corrections & Rehab
Contract ID: SLP-21-70-0181N
Description: DocuSign Enterprise Pro
Supplier: Solutions Simplified
Current Contract Amount: $846,520.00
Contract Period: 5/28/21-5/28/21

aaa.    Agency: Department of Corrections & Rehab
Contract ID: SLP-18-70-0027H
Description: Software- DocuSign Enterprise Pro
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $853,500.00
Contract Period: 6/5/20-6/5/20

bbb.    Agency: Department of Corrections & Rehab
Contract ID: SLP-18-70-0181J
Description: DocuSign Platform Edition
Supplier: Solutions Simplified
Current Contract Amount: $905,846.00
Contract Period: 3/27/20-3/26/21

ccc.    Agency: Department of Corrections & Rehab
Contract ID: SLP-21-70-0063E
Description: DocuSign Custom Engag
Supplier: Taborda Solutions Inc.
Current Contract Amount: $795,319.90
Contract Period: 3/1/22-3/1/22

ddd.    Agency: Department of Developmental Services
Contract ID: SLP-18-70-0181J v1
Description: DocuSign Enterprise Pro for Government
Supplier: Solutions Simplified
Current Contract Amount: $222,024.00
Contract Period: 2/2/21-3/29/22

63

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

eee.    Agency: Department of Developmental Services
Contract ID: SLP-21-70-0027I
Description: DocuSign Enterprise Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $223,200.00
Contract Period: 4/26/22-unknown

fff. Agency: Department of Developmental Services
Contract ID: SLP-18-70-0181J v1
Description: DocuSign Enterprise Pro for Government
Supplier: Solutions Simplified
Current Contract Amount: $214,180.00
Contract Period: 5/19/20-unknown

ggg.    Agency: Department of Veterans Affairs
Contract ID: n/a
Description: DocuSign Business Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $14,000.00
Contract Period: 6/10/22-unknown

hhh.    Agency: Department of Toxic Substances Control
Contract ID: n/a
Description: DocuSign Business Pro for Government
Supplier: Ablegov Inc.
Current Contract Amount: $22,550.00
Contract Period: 10/13/21-10/12/22

iii.  Agency: Department of Toxic Substances Control
Contract ID: n/a
Description: DocuSign Business Pro for Government
Supplier: Strato Communications Inc.
Current Contract Amount: $22,368.21
Contract Period: 10/13/22-10/12/23

jjj.  Agency: Emergency Medical Service Authority
Contract ID: n/a
Description: DocuSign Enterprise Pro Edition
Supplier: Carahsoft Technology Corp.
Current Contract Amount: $93,233.63
Contract Period: 8/7/21-8/6/22

kkk.    Agency: Emergency Medical Service Authority
Contract ID: n/a
Description: DocuSign Enterprise Pro Edition
Supplier: Carahsoft Technology Corp.
Current Contract Amount: $53,423.18
Contract Period: 8/7/22-8/6/23

lll.  Agency: Employment Development Department
Contract ID: SLP-18-70-0027H

64

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Description: DocuSign Software Licenses Emergency Covid-19
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $9,097,100.00
Contract Period: 7/21/20-4/30/23

mmm.    Agency: Employment Development Department
Contract ID: SLP-21-70-0027I
Description: DocuSign Platform Edition Enterprise Pro for Government
(FedRamp Moderate)
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $1,551,100.00
Contract Period: 7/21/20-4/30/23

nnn.    Agency: Employment Development Department
Contract ID: SLP-18-70-0027H
Description: Enterprise Pro for Government – Envelope – DocuSign, Inc.
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $66,850.00
Contract Period: 4/15/20-unknown

ooo.    Agency: Franchise Tax Board
Contract ID: SLP-21-70-0027I
Description: DocuSign SaaS Subscriptions
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $151,670.00
Contract Period: 5/10/22-5/9/23

ppp.    Agency: Health Care Access and Information
Contract ID: n/a
Description: DocuSign Enterprise Pro
Supplier: Solutions Simplified
Current Contract Amount: $74,550.00
Contract Period: 8/7/20-8/6/23

qqq.    Agency: Institute for Regenerative Medicine
Contract ID: n/a
Description: DocuSign Business Pro for Government
Supplier: Carahsoft Technology Corp.
Current Contract Amount: $4,964.46
Contract Period: 5/4/21-unknown

rrr. Agency: Institute for Regenerative Medicine
Contract ID: n/a
Description: DocuSign Enterprise Pro Edition
Supplier: Carahsoft Technology Corp.
Current Contract Amount: $15,010.03
Contract Period: 9/30/21-9/29/22

sss. Agency: Institute for Regenerative Medicine
Contract ID: n/a
Description: DocuSign Enterprise Pro Edition

65

Supplier: Carahsoft Technology Corp.
Current Contract Amount: $15,760.09
Contract Period: 9/30/22-9/29/23

ttt.  Agency: Office of Emergency Services
Contract ID: SLP-21-70-0181N
Description: DocuSign Platform Edition
Supplier: Solutions Simplified
Current Contract Amount: $402,900.00
Contract Period: 3/22/22-unknown

uuu.    Agency: Office of Emergency Services
Contract ID: SLP-18-70-0027H
Description: DocuSign Platform Edition
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $404,500.00
Contract Period: 3/20/20-3/19/21

vvv.    Agency: Office of Emergency Services
Contract ID: SLP-18-70-0181J
Description: DocuSign Platform Edition
Supplier: Solutions Simplified
Current Contract Amount: $417,780.00
Contract Period: 3/1/21-unknown

www.    Agency: Office of Energy Infrastructure
Contract ID: n/a
Description: XSFL E-sign Connector DocuSign
Supplier: Xpertdoc Technologies
Current Contract Amount: $529.80
Contract Period: 6/29/22-6/28/23

xxx.    Agency: Office of Planning & Research
Contract ID: SLP-18-70-0027H
Description: Software Maintenance DocuSign Business Pro for Government
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $6,005.00
Contract Period: 2/1/21-1/31/22

yyy.    Agency: Office of Planning & Research
Contract ID: SLP-21-70-0063E
Description: Software Licensing DocuSign Enterprise Pro for Government
Supplier: Taborda Solutions Inc.
Current Contract Amount: $19,894.76
Contract Period: 1/15/22-1/14/23

zzz.    Agency: Office of Planning & Research
Contract ID: SLP-18-70-0027H v1
Description: Software eSignature Services with Installation and Support DocuSign
Supplier: Allied Network Solutions Inc.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Current Contract Amount: $5,885.00
Contract Period: 1/24/20-1/23/21

aaaa.    Agency: Office of Systems Integration
Contract ID: n/a
Description: DocuSign Enterprise Pro for Government
Supplier: Strato Communications Inc.
Current Contract Amount: $147,411.20
Contract Period: 10/15/21-10/14/22

bbbb.    Agency: Office of Systems Integration
Contract ID: SLP-21-70-0090A
Description: DocuSign Enterprise Pro for Government
Supplier: Ablegov Inc.
Current Contract Amount: $277,550.00
Contract Period: 9/28/22-unknown

cccc.    Agency: Public Utilities Commission
Contract ID: SLP-18-70-0181J
Description: eSignature Enterprise Pro for Government – Envelope DocuSign
Supplier: Solutions Simplified
Current Contract Amount: $47,795.00
Contract Period: 4/30/21-4/29/22

dddd.    Agency: Public Utilities Commission
Contract ID: SLP-21-70-0139L
Description: DocuSign Enterprise Pro for Government
Supplier: Advanced Technical Solutions
Current Contract Amount: $48,709.00
Contract Period: 4/29/22-unknown

eeee.    Agency: Secretary of State
Contract ID: SLP-20-70-0063E
Description: Enterprise Pro for Government FedRAMP Moderate DocuSign
Supplier: Taborda Solutions Inc.
Current Contract Amount: $33,379.43
Contract Period: 6/4/21-6/21/22

ffff.    Agency: Secretary of State
Contract ID: n/a
Description: DocuSign Developer Course
Supplier: DocuSign Inc.
Current Contract Amount: $299.00
Contract Period: 5/10/2017-6/3/2017

gggg.    Agency: Secretary of State
Contract ID: SLP-21-70-0027I
Description: Enterprise Pro for Government FedRAMP Moderate Docusign
Supplier: Allied Network Solutions Inc.
Current Contract Amount: $33,400.00
Contract Period: 6/22/22-6/21/23

67

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

hhhh.      Agency: State Department Health Care Services
           Contract ID: SLP-18-70-0181J
           Description: DocuSign Enterprise Pro with FedRAMP
           Supplier: Solutions Simplified
           Current Contract Amount: $594,237.00
           Contract Period: 4/20/21-unknown

iiii. Agency: State Department Health Care Services
           Contract ID: n/a
           Description: DocuSign Software
           Supplier: System Solutions DVBE Inc.
           Current Contract Amount: $47,413.47
           Contract Period: 6/30/2017-6/29/2018

jjjj. Agency: State Department Health Care Services
           Contract ID: SLP-21-70-0181N
           Description: DocuSign Enterprise Pro with FedRAMP
           Supplier: Solutions Simplified
           Current Contract Amount: $711,260.00
           Contract Period: 3/22/22-unknown

kkkk.      Agency: State Department Health Care Services
           Contract ID: n/a
           Description: DocuSign Pro Edition
           Supplier: Allied Network Solutions Inc.
           Current Contract Amount: $68,695.00
           Contract Period: 7/1/2018-6/30/2019

llll. Agency: State Department Health Care Services
           Contract ID: n/a
           Description: DocuSign Renewal - Enterprise Pro with FedRAMP
           Supplier: Solutions Simplified
           Current Contract Amount: 89,495.00
           Contract Period: 7/1/2019-unknown

mmmm.     Agency: State Department Health Care Services
           Contract ID: n/a
           Description: DocuSign Enterprise Pro with FedRAMP
           Supplier: Solutions Simplified
           Current Contract Amount: $651,480.00
           Contract Period: 3/27/20-unknown

nnnn.      Agency: State Treasurer
           Contract ID: SLP-21-70-0181N
           Description: eSignature Pro for Government – Envelope DocuSign, Inc.
           Supplier: Solutions Simplified
           Current Contract Amount: $107,600.00
           Contract Period: 6/30/22-6/29/23

oooo.      Agency: State Treasurer

68

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

> Contract ID: SLP-21-70-0090A
> Description: DocuSign eSignature Enterprise Pro for Government
> Supplier: Ablegov Inc.
> Current Contract Amount: $112,385.00
> Contract Period: 6/3/21-unknown

pppp.    Agency: Teacher Credentialing Commission
> Contract ID: SLP-21-70-0181N
> Description: DocuSign Business Pro Edition
> Supplier: Solutions Simplified
> Current Contract Amount: $26,670.00
> Contract Period: 9/30/21-9/29/22

113.    There may be additional California government contracts that provide for the use of DocuSign services that were not ascertainable through a search of the Cal eProcure website's databases or through materials made available to date in response to FOIA requests.

### f.    Known Florida Government Contracts

114.    Pursuant to Florida Statutes, Section 215.985, the Department of Financial Services ("DFS") is required "to provide the capability for state agencies to report their contracts to the public in one central location."[42] DFS created the Florida Accountability Contract Tracking System ("FACTS") in response to this legislation. "FACTS provides a means to track state contracts by government agencies and gives the public access to contract information."[43]

115.    A search of the FACTS database (https://facts.fldfs.com/Search/ContractSearch.aspx) for the term "DocuSign" produces 6 results and indicates that the following agencies have one or more contracts for DocuSign services: Department of Children and Families, Department of Health, and Department of Transportation. The list of contracts generated on 10/25/22 is attached as Exhibit E.

116.    Based on the FACTS database, the State of Florida has the following contracts for DocuSign services:

---

[42] *F.A.Q.*, Florida Accountability Contract Tracking System, https://www.myfloridacfo.com/factshelp/faq.htm#1 (last visited Oct. 27, 2022)
[43] *Id.*

a.  Contracting Agency: Department of Children and Families
    Purchase Order Number: BA3F2B
    Vendor Name: DocuSign Inc.
    Total Purchase Order Amount: $833.75
    Order Date: 1/21/22
    Contract Period: 12/10/21-12/9/22

b.  Contracting Agency: Department of Health
    Purchase Order Number: PO2242378
    Vendor Name: DocuSign Inc.
    Total Purchase Order Amount: $900.00
    Order Date: 1/13/20
    Contract Period: One year

c.  Contracting Agency: Department of Health
    Purchase Order Number:  EP43829
    Vendor Name: DocuSign Inc.
    Total Purchase Order Amount: $2,400.00
    Order Date: 9/8/22
    Contract Period: 8/31/22-6/30/23

d.  Contracting Agency: Department of Health
    Purchase Order Number: EP43829-V2
    Vendor Name: DocuSign Inc.
    Total Purchase Order Amount: $2,400.00
    Order Date: 9/21/22
    Contract Period: One year

e.  Contracting Agency: Department of Health
    Purchase Order Number: C080BF
    Vendor Name: DocuSign Inc.
    Total Purchase Order Amount: $900.00
    Order Date: 8/26/22
    Contract Period: One year

f.  Contracting Agency: Department of Transportation
    Purchase Order Number: PO1452223
    Vendor Name: DocuSign Inc.
    Total Purchase Order Amount: $3,200.00
    Order Date: 6/28/17
    Contract Period: N/A

117.    Additionally, as discerned from a response to a FOIA request, the Department of
Management Services and the Division of Finance & Administration contracted through third-
parties to purchase DocuSign products.

118. The Department of Management Services, under Requisition No. PR10996282, contracted with Carahsoft Technology Corp. on June 26, 2019, to purchase DocuSign Enterprise Professional for Gov Seats and DocuSign Premier Support for the period July 1, 2019, to June 30, 2020, for a total contract price of $8,251.20.

119. The Division of Finance & Administration, under Requisition No. PR11145662-V3, contracted with Carahsoft Technology Corp. on June 11, 2020, to purchase DocuSign Enterprise Professional for Gov and DocuSign Connector for the period October 31, 2019, to October 30, 2020, for a total contract price of $1,162.50.

120. The Division of Finance & Administration, under Requisition No. PR11416288, contracted with Carahsoft Technology Corp. on June 22, 2020, to purchase DocuSign Enterprise Professional for Gov, DocuSign Premier Support, and DocuSign Connector for the period July 1, 2020, to June 30, 2021, for a total contract price of $54,228.90.

121. The Division of Finance & Administration, under Requisition No. PR11813353, contracted with Carahsoft Technology Corp. on July 2, 2021, to purchase DocuSign Enterprise Professional for Gov, DocuSign Premier Support, and DocuSign Connector for the period July 1, 2020, to June 30, 2021, for a total contract price of $36,390.49.

122. The Division of Finance & Administration, under Order No. C0331A, contracted with Carahsoft Technology Corp. on July 3, 2022, to purchase DocuSign Enterprise Professional for Gov, DocuSign Enterprise Premier Support, and DocuSign Connector for the period July 1, 2022, to June 30, 2023, for a total contract price of $54,228.90.

123. There may be additional State of Florida government contracts that provide for the use of DocuSign services that were not ascertainable through a search of the FACTS database or through materials made available to date in response to FOIA requests.

g. *Government Use Cases and Marketing*

124.    Defendant targets Government customers and potential customers in its marketing materials, advertising "industry specific offerings that are available through direct sales only," including "offerings for Government (*e.g.*, FedRAMP) . . ." *FAQ*, DocuSign, https://www.docusign.com/products-and-pricing (last visited Nov. 10, 2021). A marketing video for potential Government customers states that "the DocuSign Agreement Cloud for Government can help protect your critical data while minimizing operational risk. In fact, ***DocuSign is FedRAMP authorized so you can rest assured your information is protected under federal security regulations***. ***Now government agencies can securely prepare, sign, act on, and manage agreements*** while also delivering a better digital experience for staff and citizens." *DS GOV Customer Explainer*, DocuSign, https://docusign.wistia.com/medias/xewo0rnsk0?wvideo=xewo0rnsk0 (video file available for streaming) (last visited Nov. 19, 2021) (emphasis added); *see also Industry Brief: DocuSign for Federal Government*, *available at* https://www.docusign.com/sites/default/files/docusign-for-federal-government_industry-brief.pdf.

125.    Defendant advertises that its products can help Government entities across a wide range of both public-facing and internal uses, including:

a. Automating processes for:

    i. Applications for services, such as: citizenship and visa applications; passport applications; grant and loan applications; public benefit applications. *Id.*

    ii. Inter-agency agreements, such as: procurement; statements of work; master service agreements; RFP (Request for Proposal) process management; purchase orders; memorandums of understanding; research and data analysis requests; multi-agency contracts; multiple award schedule contracts; government wide acquisition contracts. *Id.*

      iii.   Internal processes, such as: employee recruitment and onboarding; benefits enrollment; vacation requests; compliance forms; IT policy management; asset tracking; travel request and reimbursement. *Id.*

b.   Delivering "on [their] mission in areas" such as: forms containing Personal Identifiable Information; telework requests; legal and compliance; procurement contracts; and telemedicine/patient consent forms. *Modernize your government agency with DocuSign*, DocuSign, https://www.docusign.com/solutions/industries/government (last visited Nov. 10, 2021). This includes maintaining compliance with requirements for protecting Personal Health Information and other information under the Health Insurance Portability and Accountability Act ("HIPAA"). *See* DocuSign, *The paperless future of health and life sciences*, *available at* https://www.docusign.com/white-papers/the-paperless-future-of-healthcare-and-life-sciences (white paper available for download).

c.   Delivering "[u]rgent citizen services," such as: expediting vaccine administration (*e.g.*, completing consent forms; onboarding providers remotely; and streamlining immunization records requests); accelerating service delivery (*e.g.*, streamlining benefit applications; speeding up legal casework; and centralizing document storage for search and audit); and digitally transforming manual processes (*e.g.*, streamlining the hiring and onboarding process; and automating manual paperwork). *Government use cases*, DocuSign, https://www.docusign.com/solutions/industries/government (last visited Nov. 10, 2021).

d.   Managing a range of "use cases," such as: case management (*e.g.*, serving "more people with **a convenient, yet highly secure platform** that enables agencies to efficiently manage large volumes of sensitive documentation, reducing caseloads and backlogs"); human capital management (*e.g.*, improving the efficiency of employee recruiting, onboarding, training, and retention efforts); social services (*e.g.*, improving processes for citizens applying for and receiving public services); correspondence management (*e.g.*, managing communications and records "quickly, **securely**, and collaboratively with **secure** document sharing"); taxes (*e.g.*, automating workflows and document tracking for collections and assessments); permits and licensing (*e.g.*, streamlining the permitting and licensing process "while **maintaining compliance with audit trails** for every document"); grants and lending (*e.g.*, funding "the right organizations quickly, **protecting against waste, fraud, and abuse with [DocuSign's] trusted security and privacy protections**"); procurement (*e.g.*, streamlining the procurement process); and enforcement and corrections (*e.g.*, improving "efficiency in the justice system with automated workflows, document tracking, **and audit trails**"). *Use cases*, DocuSign, https://www.docusign.com/solutions/industries/government (last visited June 10, 2022) (emphasis added).

B.   <u>Defendant's Representations about eSignature Product Security</u>

126.    On information and belief, Defendant DocuSign has made and continues to make representations to customers and potential customers, including Government entities, that the eSignature Product is secure and compliant with the Security Standards set forth in Part II above. Such representations (explicit or implicit) are made in contract or agreement terms (express or implied) between Defendant and the Government; advertising, promotional, and informational materials targeted toward Government customers or potential customers; filings and submissions to Government agencies; and other statements or records. In addition to the representations noted in the preceding section, a non-exhaustive sampling of additional such representations is set forth in the following Paragraphs.

### 1.    *General Representations that the eSignature Product is Secure*

127.    Defendant represents that the eSignature Product "allows an agreement to be signed electronically on a wide variety of devices, from virtually anywhere in the world, *securely*." 2021 Form 10-K at 5 (emphasis added).

128.    Defendant's public website makes numerous representations that the eSignature Product is secure, including:

   a.    Describing the eSignature Product as "[f]ast, efficient, connected and *secure*," "*secure and compliant*," and "*[l]awful and court admissible*." *Send, sign, success*, DocuSign, https://www.docusign.com/products/electronic-signature (last visited Nov. 10, 2021) (emphasis added); *Features*, DocuSign, https://www.docusign.com/products/electronic-signature (last visited Nov. 10, 2021) (emphasis added).

   b.    Describing the eSignature for U.S. Federal Government product as enabling agencies to "*[s]ecurely send and sign agreements digitally while maintaining a complete audit trail* of activity on each document." *Featured products for government*, DocuSign, https://www.docusign.com/solutions/industries/government (last visited Nov. 10, 2021) (emphasis added).

   c.    Stating that Defendant "*sets the global standard for electronic signatures*" and "delivers the *most trusted and widely used solution* available." *Simplify 21 CFR Part 11 Compliance Documentation*, DocuSign,

https://www.docusign.com/whitepapers/using-docusign-to-facilitate-compliance-with-21-cfr-part-11 (last visited Nov. 10, 2021) (emphasis added).

d. Stating that "[a]ll of DocuSign's offerings include *the highest levels of trust and security* . . ." *FAQ*, DocuSign, https://www.docusign.com/products-and-pricing (last visited Nov. 10, 2021) (emphasis added).

e. Stating that Defendant's products enable Government customers to "[p]rovide *efficient, reliable government services*" by "[r]educ[ing] costs and *increas[ing] security and convenience* with proven privacy safeguards, mobile access, and flexible, self-service document functionality." *Deliver public services faster*, DocuSign, https://www.docusign.com/solutions/industries/government (last visited June 10, 2022) (emphasis added).

f. Representing that: "In general, *electronic signature is extremely safe*. In fact, it's *even safer than an ink-and-pen signature* because of the *extra layers of authorization that make electronic signatures more difficult to forge*. The FedRAMP authorization of DocuSign provides *even further proof of the high security standards of DocuSign eSignature*." *Are DocuSign Products Authorized by FedRAMP?* DocuSign (May 11, 2020), https://www.docusign.com/blog/are-docusign-products-authorized-by-fedramp (emphasis added).

129.    Defendant also represents that the eSignature Product is "*highly auditable*" because "*every signed document is backed by a unique, auditable Certificate of Completion*, automatically capturing key signing details to help authenticate the document. It includes party names, email addresses, public IP addresses, and *a time-stamped record of individuals' interactions with the document*." 2021 Form 10-K at 6 (emphasis added). Defendant states that this "level of evidence and auditability *exceeds what was possible with traditional ink-on-paper signatures*." *Id.* (emphasis added); *see also* DocuSign, *Industry Brief: Modernize Government Contracts to Maximize Value* (Oct. 5, 2020) (stating that that the product provides a *"[f]ull audit trail* (names, emails, IP addresses, locations);" a "*[f]ull chain of custody* (time-stamped sends, views, downloads);" and "[a]ll downloads digitally signed and *protected against tampering*") (emphasis added).

130.    Defendant represents that the automatic generation of "audit trails" within the Certificates of Completion leads to "*reduced risk*," in part because "fewer manual interactions

75

during an agreement's lifecycle means *fewer opportunities for mishandling or improper access*." 2021 Form 10-K at 7 (emphasis added); *see also Benefits*, DocuSign, https://www.docusign.com/solutions/industries/government (stating that the eSignature Product can "*[m]itigate risk*" and "*[e]nsure peace of mind and accountability with built-in audit trails that stand up in court . . .*") (last visited Nov. 10, 2021) (emphasis added).

131. Defendant also offers "the ability to add signer authentication" as "additional security." *Will E-Signature Stand Up in Court? How DocuSign ensures the integrity and reliability of documents in our system* at 2, *available at* https://www.docusign.com/sites/default/files/will_esignature_stand_up_in_court_0.pdf. Signer authentication is "a way to verify identity *before* an individual can view or sign a document." *Id.* (emphasis added). Authentication methods include email address verification, one-time access codes, questions about personal but public information (such as past addresses or vehicles owned), and government-issued photo ID verification. *Id.* at 3.

132. Finally, Defendant represents that "[o]nce the signing process is complete, all documents are digitally sealed using Public Key Infrastructure (PKI) encryption, an industry-standard technology." *Id.* at 8. According to Defendant, this encryption "ensures the electronic signature is valid and that the document isn't tampered with or altered since the date of signing." *Id.*

2. *Specific Representations that the eSignature Product Complies with Security Standards*

133. Defendant represents that it "seek[s] to meet *the industry's most rigorous security certification standards . . .*" and that its "service protocols and operations *meet or exceed some of the most stringent U.S., EU and global security standards*." 2021 Form 10-K at 6, 9 (emphasis added); *see also FAQ*, DocuSign, https://www.docusign.com/products/electronic-signature (last visited Nov. 10, 2021) (stating that "DocuSign meets or exceeds national and international

security standards"). In its advertising to potential Government customers, Defendant states that

"DocuSign offers the broadest portfolio of deployment, storage, and security options . . . to meet

data privacy, data residency, regulatory *and signer authentication requirements*," and that

DocuSign "*meets or exceeds the most stringent security standards . . .*" *Industry Brief: DocuSign*

*for Federal Government*, *available at* https://www.docusign.com/sites/default/files/docusign-for-

federal-government_industry-brief.pdf (emphasis added).

134.    Defendant specifically represents or has represented that the eSignature Product

complies with the following Security Standards:

a.  **UETA and ESIGN Act:** Defendant states that the eSignature Product "complies
    with the definition of an electronic signature under" the UETA and the ESIGN Act.
    *Electronic signatures and legality in the United States, United Kingdom, and
    European Union*, DocuSign, https://www.docusign.com/learn/electronic-
    signature-legality (last visited Nov. 10, 2021). Defendant also states that its
    products "exceed [the] requirements" of both Acts "and are warranted for
    compliance with the ESIGN Act." *UETA and ESIGN Act*, DocuSign,
    https://www.docusign.com/learn/esign-act-ueta (last visited June 10, 2022).

b.  **Part 11 Regulations:** Defendant states that it offers "Life Sciences Modules for 21
    CFR Part 11," which are "add-ons for DocuSign eSignature that support
    compliance with the electronic signature practices established by the U.S. Food and
    Drug Administration's 21 CFR Part 11 regulations." 2021 Form 10-K at 8.
    Defendant further states that it "has partnered with industry experts to deliver
    transactions which meet [the Part 11] regulations." DocuSign, *Simplify 21 CFR
    Part            11            Compliance            Documentation*,
    https://www.docusign.com/whitepapers/using-docusign-to-facilitate-compliance-
    with-21-cfr-part-11 (last visited Nov. 10, 2021). Defendant states that its 21 CFR
    Part 11 Module "contains industry-designed capabilities that include . . . Signature-
    level credentialing," "Signature-level Signature Meaning," and "Signature
    manifestation (Printed Name, Date/Time, and Signature Meaning)." *Id.*

c.  **EU eIDAS:** Defendant represents that "DocuSign supports electronic and digital
    signatures around the world, including the three signature levels defined by the
    European Union through the eIDAS regulation: electronic signatures, advanced
    electronic signatures and qualified electronic signatures. This allows companies of
    all sizes to complete approvals, agreements and transactions faster while staying
    compliant with eIDAS." *See Implementing Electronic Signatures and Digital
    Signatures        with        DocuSign*,        *available        at*
    https://www.docusign.com/sites/default/files/implementing_e-
    signatures_and_digital_signatures.pdf. Defendant further represents that the

eSignature Product "provides a range of options for authenticating users and proving their identities . . . To be compliant with regulations in different countries, DocuSign offers identity proofing for standard electronic signatures, advanced electronic signatures and qualified electronic signatures (the latter two being terms defined in the EU's eIDAS regulations)." 2021 Form 10-K at 9.

135. Defendant also represents that its products can help Federal executive Government agencies comply with the 21st Century IDEA Act. *See It's not just a good IDEA. It's the law*, DocuSign, https://www.docusign.com/21st-century-idea-act (last visited Nov. 10, 2021); *see also Your Guide to 21st Century IDEA Act Compliance*, available at https://www.docusign.com/sites/default/files/Your-Guide-to-21st-Century-IDEA-Act-Compliance.pdf; *The agreeable government mandate* 8, *available at* https://www.docusign.com/white-papers/the-agreeable-government-mandate (white paper available for download) (urging that the "clock is ticking on the 21st Century IDEA" and DocuSign is "FedRAMP authorized and ready to help").

## IV. Critical Security Flaws in the eSignature Product: Walkthrough of the Security Exploit

136. The ability to carry out the Security Exploit derives from the nexus of multiple security vulnerabilities in the eSignature Product. Collectively, these vulnerabilities enable users to download a document signed via the eSignature Product in a non-secured PDF format, directly edit or convert the document into an editable (*e.g.*, Microsoft Word) format, modify the document, convert it back into a PDF, and upload it back into the eSignature Product—all while preserving any electronic signature images, whether supplied by the eSignature Product, another product, or the user through wet signature, throughout the conversion and editing process and bypassing any signer authentication requirements, which would only apply *before* an original signature is applied to the document. Once the modified document is re-uploaded, the user can request

78

additional signatures from other parties. Both the initial signer(s) and any subsequent signer(s) may be unaware that they are signing different versions of the same document.

137. Specific security vulnerabilities in the eSignature Product include: (1) the failure of Defendant's PDF Application Programming Interface ("API")[44] to adequately secure downloaded PDF documents to protect them from alteration, such as by locking them from editing similar to how a password protection feature functions; (2) the failure of the eSignature Product to incorporate a unique identifier, such as a document-specific Envelope ID number, into the electronic signature image(s) that would associate each signature image with a specific version of a document; (3) the failure of the eSignature Product to generate any flag or warning that pre-existing signature image(s) may have been generated in connection with a different version of the document; (4) the failure of the audit trail to enable parties to determine when, or to what version of the document, any pre-existing signature image(s) were applied or to determine what terms within the document were modified between the different document versions; and (5) vulnerabilities in the process by which electronic signatures are represented as "valid" in the security banners produced on PDF documents generated via the eSignature Product, including the existence of visually identical representations on the final document indicating that "All signatures are valid," even if one or more signature image(s) was generated in connection with a different version of the document.

138. On information and belief, PKI (Public Key Infrastructure) encryption does not protect against the Security Exploit because a document is digitally sealed only *after* the signing process for all signatures is complete. The Security Exploit is executed *during* this signing process and *before* it is complete.

---

[44] An API is a software intermediary that allows two applications to talk to each other.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

139.    The following overview of the Security Exploit was made using the eSignature Product between November 5-9, 2021. On information and belief, the overview was performed using the November 2021 Release version of the eSignature Product. *See Release Notes*, DocuSign, https://support.docusign.com/en/releasenotes (last visited Dec. 5, 2021).

140.    Relator first discovered the Security Exploit in or around June 2021. On information and belief, the discovery of the Security Exploit was made using the June 2021 Release version of the eSignature Product. *See id.*

141.    On information and belief, the Security Exploit is replicable using any available eSignature Product version currently offered by Defendant. Relator is unaware of any additional features of the eSignature for U.S. Government product that would protect it from the Security Exploit.

142.    On information and belief, the Security Exploit has been possible for the average user with basic computer literacy since at least approximately 2008. By that point, tools to convert PDF documents to editable formats (*e.g.*, Word) while preserving images became commercially available. Further, in July 2008, Adobe released the PDF specification as an open standard, relinquishing its control over the specification as a proprietary format. This means that it is up to other third-party interface creators, such as Defendant, to ensure their API with PDF adequately secures PDF documents from alteration.

143.    On information and belief, Defendant either failed to try to build adequate protections against document alteration and signature forgery into its PDF API, or failed to do so correctly, for its eSignature Product.

144.    On information and belief, the Security Exploit can be performed by an individual with a commercial (paid) DocuSign account, as well as by an individual with a free trial. Users

could conceivably generate multiple free email addresses to access multiple free trials. The universe of potential "exploiters" is therefore vast.

145. There are at least two potential scenarios in which the Security Exploit can be executed. This Complaint refers to these two scenarios, both based on common workflows for companies or individuals executing documents via the eSignature Product, as: (1) Signatures Acquired Sequentially; and (2) Signatures Acquired in Parallel.

### 1. Scenario 1: Signatures Acquired Sequentially

146. The Signatures Acquired Sequentially scenario is based on a common industry practice in which contracts are sent sequentially to one or more parties for their signatures, with the first party receiving a document that is unsigned, along with a notation to add their signature, and each subsequent party receiving a document that has been pre-signed by one or more prior signing parties, along with a notation for the receiving party to add their signature as well. In a simple scenario, for example, an agent of a company might first solicit a signature from an outside party. Once the signature has been obtained and verified, the agent would then solicit the signature of a second party, such as a representative of the company with signatory authority. Under these types of work arrangements, it is not unexpected for the first person to sign the document and initially receive back only a copy with their own signature. They expect to receive the document signed by the second party at a later time. Similarly, it is not unexpected for the second party to receive the document for execution after it has already been signed by the first party.

*See image on following page.*

81

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS



Sequentially Acquired Signatures

1. Originator prepares document for signature

2. Originator uploads document into DocuSign

3. Originator enters information for First Signer

4. Originator requests signature from First Signer via DocuSign

5. First Signer signs document via DocuSign

6. First Signer and Originator receive copy of document signed by First Signer and summary page

7. Originator downloads PDF of document

8. Originator converts PDF into modifiable format (e.g. Word), retaining signature image of First Signer

9. Originator modifies document retaining signature of First Signer

10. Originator uploads modified document with signature of First Signer appearing in the modified document

11. Second Signer signs document via DocuSign, and the modified document now appears to be signed by First Signer and Second Signer

12. Originator and Second Signer receive modified document with signature of First Signer and Second Signer and Certificate of Completion via eSignature product

13. The PDF of the modified document, appearing to be signed by the First Signer and the Second Signer, includes, among other security features, a banner with the following (or substantially similar) language: "This document is signed. All signatures are valid."

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

*a. Originator Prepares Document for Signature Outside of eSignature Product*

147.    The process for using the eSignature Product generally begins with a user, referred to as the "Originator" in the eSignature Product, preparing a document outside of the eSignature Product. Once the document is ready for signature, the Originator uploads the document via a web portal into the eSignature Product of the DocuSign Agreement Cloud platform. The eSignature Product accepts a variety of common document formats (*e.g.*, PDF, Microsoft Word). For illustration, a simple example purchase order (the "Public PO") has been prepared. The Public PO includes terms such as the identity of the customer and company, the items to be purchased, and the price. The Public PO also includes a signature area below the terms. The following example purchase order was originally prepared as a Microsoft Word document:


*See image on following page.*

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

# **PURCHASE ORDER**

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.:  64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $  1,250.00 |
| | | $ | $ |
| | | $ | $ |

| | | |
|---|---|---|
| **Subtotal** | | $ 48,750.00 |
| **Sales Tax** | @ 9.5 % | $  4,631.25 |
| **Shipping** | | $  4,870.00 |
| **Other** | | $ |
| **Discount** | @  5.0 % | ($  2,437.50) |
| **Amount Payable** | | $ 55,813.75 |

_____          _____
Authorized by                              Date

_____          _____
Accepted by                                Date

### b. *Originator Uploads Document into eSignature Product*

148.    From the main page of the eSignature Product accessed using a web browser, the Originator is invited to upload a document through an interface such as:



149.    Documents added to the eSignature Product for signature are packaged into what DocuSign refers to as an "Envelope." The Originator can add multiple documents to the same Envelope. In this example, the Public PO is uploaded to the eSignature Product, which displays a new interface, shown below, through which the Originator can add more documents or proceed to the next step.



> c. *Originator Enters Information for First Signer via eSignature Product*

150.    Using the eSignature Product, the Originator enters information for a first recipient (the "First Signer"), who is the first person who will be signing the document. Required information includes the name of the First Signer and an email address through which the recipient will be sent the document for signature. In this example, the First Signer is the customer, John Public.



151.    Upon selecting "NEXT," the Originator advances to a user interface through which the Originator can add details regarding the information to be automatically entered when the First Signer signs the document. The information can include, for example, the name of the First Signer, the title of the First Signer, the name of the First Signer's company, and the date or time

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

of signature, in addition to the image representation of the First Signer's signature (including the unique hash value generated by DocuSign that is associated with the First Signer, as described further below) that will be included in the final document (the "signature element"). The figure below shows the user interface with the Originator having added two placeholders (or "anchors"): one for the signature element for the First Signer, John Q. Public, and one for the date of signature.

*See image on following page.*

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

# PURCHASE ORDER

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.:  64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $ 1,250.00 |
| | | $ | $ |
| | | $ | $ |

| | | |
|---|---|---|
| Subtotal | | $ 48,750.00 |
| Sales Tax | @ 9.5 % | $ 4,631.25 |
| Shipping | | $ 4,870.00 |
| Other | | $ |
| Discount | @ 5.0 % | ($ 2,437.50) |
| Amount Payable | | $ 55,813.75 |

Sign
↓

Date Signed

_____          _____
Authorized by                              Date


_____          _____
Accepted by                                 Date

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

> d. *Originator Requests Signature from First Signer via eSignature Product*

152.    After confirming the information to be automatically added to the document upon signature, as well as the location of the corresponding anchors, the Originator selects "send" to request the signature from the First Signer. After selecting send, the eSignature Product generates an email, such as the following, including text requesting the First Signer to review the document. The eSignature Product then sends the email. In some cases, the eSignature Product can notify the First Signer of the pending signature request using another communication channel, such as an SMS message if the Originator has provided the phone number of the First Signer. The communication channel is irrelevant to the ability to execute the Security Exploit.



> e. *First Signer Signs Document via eSignature Product*

153.    Upon selecting the button marked "REVIEW DOCUMENT," the First Signer is shown a series of user interfaces to access and review the document. If they have not previously signed a document, the First Signer is invited to create a signature either using a pre-formatted variant based on their name or initials or by drawing their signature using a mouse or touchscreen input. After creating their signature, the First Signer is shown the document with the anchor where

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

their signature will be located. Other anchors are automatically populated that include text generated based on when or where the signature is made. The First Signer selects the signature anchor to add their customized signature element to the document. Upon confirming the signature, and selecting the "FINISH" button, the document is finalized.

*See image on following page.*

90

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: 11BAA540-1B83-4373-8DD2-0DF6592B8E2D

# PURCHASE ORDER

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.:  64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $  1,250.00 |
| | | $ | $ |
| | | $ | $ |

| | | |
|---|---|---|
| **Subtotal** | | $ 48,750.00 |
| **Sales Tax** | @ 9.5 % | $  4,631.25 |
| **Shipping** | | $  4,870.00 |
| **Other** | | $ |
| **Discount** | @ 5.0 % | ($  2,437.50) |
| **Amount Payable** | | $ 55,813.75 |

Sign
↓

_____            11/5/2021
Authorized by                      _____
                                   Date


_____            _____
Accepted by                        Date

PurchaseOrder-Public.docx                                  1 of 1

FINISH

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

> *f.   First Signer and Originator Receive Copy of Document Signed by First Signer, Along with Certificate of Completion*

154.    After the First Signer selects "FINISH," the eSignature Product converts the document into a PDF, with the signature anchor replaced with the customized signature element of the First Signer. The eSignature Product provides a copy of this signed PDF document to the First Signer and the Originator through emails notifying the First Signer and the Originator that they may download a copy of the document. Users who have created a DocuSign account can also retrieve documents they have signed through the home page of the DocuSign website. The following image shows the text of the signed PDF document once signed by the First Signer. Note that the signature anchor from above has been replaced with an image corresponding to the signature element of the First Signer.

*See image on following page.*

92

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: 11BAA540-1B83-4373-8DD2-0DF6592B8E2D

# PURCHASE ORDER

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.:  64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $ 1,250.00 |
| | | $ | $ |
| | | $ | $ |

| | | |
|---|---|---|
| **Subtotal** | | $ 48,750.00 |
| **Sales Tax** | @ 9.5 % | $ 4,631.25 |
| **Shipping** | | $ 4,870.00 |
| **Other** | | $ |
| **Discount** | @ 5.0 % | ($ 2,437.50) |
| **Amount Payable** | | $ 55,813.75 |

DocuSigned by:

*John Public*

BA054AD16E6F4E4

Authorized by

11/5/2021

Date

_____
Accepted by

_____
Date

93

155.    The signature image, shown in detail below, is ostensibly unique to the user, and includes both: (1) an image representation corresponding to the signature of the First Signer; and (2) a hash value that serves as an identifier for the user. Here, the hash value is "BA054AD16F6F4F4." The signature image does not, however, contain a hash value or other unique identifier, such as a document-specific Envelope ID number, that would associate the signature image with a specific version of a document. Further, the signature image is not secured or protected, meaning that it can be copied/cut and pasted onto other documents, although taking advantage of this particular vulnerability is not required for executing the Security Exploit.



156.    The eSignature Product also generates a summary page (the "Certificate of Completion") with information on when and how the signatures that are included in the document were generated. As shown below, the Certificate of Completion includes information such as: the Envelope ID for the document that has been signed; the number of pages in the document; the number of signatures; the Originator; and a summary of signer events, including a copy of the First Signer's signature and other information to track the signature.

94

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 11BAA5401B8343738DD20DF6592B8E2D | | Status: Completed |
| Subject: Please DocuSign: PurchaseOrder-Public.docx | | |
| Source Envelope: | | |
| Document Pages: 1 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | ▇▇▇▇▇ |
| AutoNav: Enabled | | ▇▇▇▇▇▇▇▇ |
| EnvelopeId Stamping: Enabled | | IP Address: ▇▇▇▇ |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: ▇▇▇▇▇ | Location: DocuSign |
| 11/5/2021 3:32:22 PM | ▇▇▇▇▇ | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| John Public<br>▇▇▇▇▇<br><br>Security Level: Email, Account Authentication (None) | *John Public*<br>6A054AD16E6F4E4... | Sent: 11/5/2021 3:34:36 PM<br>Viewed: 11/5/2021 3:38:36 PM<br>Signed: 11/5/2021 3:39:55 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: ▇▇▇▇ | |
| Electronic Record and Signature Disclosure:<br>  Accepted: 11/2/2021 1:13:45 PM<br>  ID: 1c712024-9ec9-4d9d-a08a-e181574b8044 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/5/2021 3:34:36 PM |
| Certified Delivered | Security Checked | 11/5/2021 3:38:36 PM |
| Signing Complete | Security Checked | 11/5/2021 3:39:55 PM |
| Completed | Security Checked | 11/5/2021 3:39:55 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

> g.  *Originator Downloads PDF of Signed Document from eSignature Product*

157.    At this point, the First Signer has signed the document and sent it back via the eSignature Product to the Originator to finalize. In a normal (non-exploitive) scenario, the Originator could review the signature of the First Signer and request the signature of other parties (or sign it themselves). The Originator is also presented the option, through the eSignature Product, to download a PDF copy of the document as signed by the First Signer. To do so, the Originator selects the download button. It is also possible to download a PDF copy using the "Print & Sign" button from the DocuSign cloud.[45]



158.    A pop-up interface within the eSignature Product prompts the Originator to select which files they would like to download: the signed document, the Certificate of Completion, or both. The platform, by default, provides both files as separate documents, but they can be combined into one file.

---

[45] This option is available to users within a DocuSign account.



159.     Below is a copy of the Public PO, as signed by the First Signer, when viewed through Kofax Power PDF Advanced Version 4.0.0.12.0.21465, a commonly available PDF reader application.[46] The PDF generated by the eSignature Product includes a header (the "DocuSign Envelope ID"), as well as a banner at the top of the view screen which appears by default when opening the PDF. The banner reads: "This document is signed. All signatures are valid." The apparent intent of this banner is to assure the reader that the signatures in the document are valid. The banner also includes a "Signatures Panel" button. On selecting this button, an additional panel appears with details to confirm that the "signature is valid." The singular "signature is valid" is used whether there is one signer or more than one signer, thus failing to provide sufficient information for a reader to distinguish between a document that has been

---

[46] On information and belief, a user can use any commonly available PDF reader to view the features highlighted below, including the DocuSign header, security banner, Signatures Panel, and Certificate of Completion. To perform the step of converting the PDF to an editable format (e.g., Microsoft Word), a user can use any commonly available file exporting/converting tool, including tools that may be offered as standalone products (possibly for free) or as a feature of advanced or professional versions of PDF reader software.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

electronically signed by one party or more than one party. The reader also is not alerted that the

document may have been edited in-between each of the signatures.

*See image on following page.*



COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

160.    Below is a copy of the Public PO viewed using Adobe Acrobat Reader DC Version 2021.007.20099, another commonly available PDF reader application. Although the format and wording may vary slightly based on the PDF reader, essentially the same security features highlighted above are present. The banner text reads: "Signed and all signatures are valid."



161.    The Originator can also review the Certificate of Completion, which contains information consistent with the information discussed above. In addition, the Certificate of Completion includes "Record Tracking" and "Signer Events" information apparently designed to support verification or authentication of the signatures in the document.



COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

> h. *Originator Converts PDF into Editable Format (e.g., Microsoft Word) Outside of eSignature Product, Retaining Image of Signature of First Signer*

162.    Using standard, built-in, or otherwise commonly available document conversation tools, the Originator converts the signed document from a PDF to an editable format, such as the Microsoft Word .docx format.[47] In many cases, this can be performed with a single click using the same software used to view the PDF, requiring little additional input or technical ability to convert the document. Commonly available PDF readers capable of converting PDFs to editable formats include Kofax Power PDF Advanced, Adobe Acrobat Pro DC, or Adobe Acrobat Standard DC. Below is an example of the signed Public PO after it has been converted from PDF to the .docx format.

*See image on following page.*

---

[47] As noted above, Defendant's PDF API does not work effectively to secure PDFs downloaded via the eSignature Product to protect them from alteration.

102

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: 11BAA540-1B83-4373-8DD2-0DF6592B8E2D

# PURCHASE ORDER

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.: 64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority<br>mail ☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $  1,250.00 |
| | | $ | $ |
| | | $ | $ |

| | | | |
|---|---|---|---|
| Subtotal | | | $ 48,750.00 |
| Sales Tax | @ 9.5 % | | $ 4,631.25 |
| Shipping | | | $  4,870.00 |
| Other | | | $ |
| Discount | @ 5.0 % | | ($ 2,437.50) |
| **Amount Payable** | | | $ 55,813.75 |

DocuSigned by:

*John Public*
RA0S4AD16E6E4E4

Authorized by

11/5/2021

Date

_____
Accepted by

_____
Date

103

163. ***The conversion tool retains an image of the First Signer's signature element***. The rest of the text of the signed document is now fully editable in Microsoft Word.

   *i.   Originator Modifies Document Outside of eSignature Product Retaining Signature Image of First Signer*

164. As the document is now fully editable, the Originator is at liberty to make whatever modifications they wish, towards whatever goals they have in mind. To illustrate, continuing the current example, the Originator modifies the Public PO to change the unit price and total amount associated with each of the goods, as well as to add additional items. The Originator can modify the rest of the terms consistent with these changes to avoid the appearance of accounting or clerical errors. It should be appreciated that this is a simple "mock" example. In a substantially longer agreement, more subtle changes could be made that would be difficult to detect by the average reviewer who is not aware of the Security Exploit and who relies on the representations about validity and security contained in the DocuSign banners and other DocuSign materials. It is relatively simple to match fonts, spacing, and formatting to obscure any changes.

165. In the example provided below, the Originator has made the following changes: (1) increased the price of each laptop from $450.00 to $500.00, resulting in the total laptop charges increasing from $22,500.00 to $25,000.00; (2) increased the price of each monitor from $250.00 to $300.00, resulting in the total monitor charges increasing from $25,000.00 to $30,000.00; (3) increased the price of each laptop charger from $50.00 to $75.00, resulting in the total laptop charger charges increasing from $1,250.00 to $1,875.00; (4) added charges for 50 laptop warranties at a price of $50.00 each for a total warranty charge of $2,500.00; (5) increased the subtotal from $48,750.00 to $59,375.00; (6) increased the sales tax from $4,631.25 to $5,640; (7) increased the shipping cost from $4,870.00 to $5937.50; (8) increased the 5% discount from $2437.50 to $2968.75; and (6) increased the total amount payable from $55,813.75 to $73,921.88.

DocuSign Envelope ID: 11BAA540-1B83-4373-8DD2-0DF6592B8E2D

**Customer:**
John Q. Public
(555) 555-1234

# PURCHASE ORDER

Date 11/5/2021
Purchase Order No.: 64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 500.00 | $ 25,000.00 |
| Monitor | 100 | $ 300.00 | $ 30,000.00 |
| Laptop charger | 25 | $ 75.00 | $ 1,875.00 |
| Laptop Warranty | 50 | $ 50.00 | $ 2,500.00 |
| | | $ | $ |

| | | |
|---|---|---|
| Subtotal | | $ 59,375.00 |
| Sales Tax | @ 9.5 % | $ 5,640.63 |
| Shipping | | $ 5937.50 |
| Other | | $ |
| Discount | @ 5.0 % | ($ 2,968.75) |
| **Amount Payable** | | $ 73,921.88 |

DocuSigned by:

*John Public*

8A054AD16E6E4E4

Authorized by

11/5/2021

Date

Accepted by

Date

*j.  Originator Uploads Modified Document into eSignature Product*

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

166.    Using a similar process to the one described above in paragraphs 142-143, the Originator uploads the modified document (still in Microsoft Word .docx format) to the eSignature Product. The platform handles the steps of converting the document back into a PDF to facilitate signature by additional parties. ***Importantly, the image of the First Signer's signature element remains intact as the document is converted***.

167.    The Originator specifies the identity of the other party who will sign the document (the "Second Signer"). This may be the Originator or a third-party associated with the Originator (*e.g.*, a supervisor or co-worker where the Originator themselves does not have signatory authority). Using steps similar to those described above, the Originator provides information for the second required signature and other elements (*e.g.*, date), places the corresponding anchors, and requests the Second Signer to sign the document.

*See image on following page.*

106

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: 11BAA540-1B83-4373-8DD2-0DF6592B8E2D

# **PURCHASE ORDER**

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.: 64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority<br>mail ☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 500.00 | $ 25,000.00 |
| Monitor | 100 | $ 300.00 | $ 30,000.00 |
| Laptop charger | 25 | $ 75.00 | $ 1,875.00 |
| Laptop Warranty | 50 | $ 50.00 | $ 2,500.00 |
| | | $ | $ |

| | | | |
|---|---|---|---|
| Subtotal | | | $ 59,375.00 |
| Sales Tax | @ 9.5 % | | $ 5,640.63 |
| Shipping | | | $ 5937.50 |
| Other | | | $ |
| Discount | @ 5.0 % | | ($ 2,968.75) |
| **Amount Payable** | | | $ 73,921.88 |

DocuSigned by:

*John Public*

BA054A018565E4

Authorized by

11/5/2021

Date

[Sign]

[Date Signed]

Accepted by

Date

PurchaseOrder-Public_edited.docx

1 of 1

> k.  *Second Signer Signs Document via eSignature Product, and the Modified Document Now Appears to be Signed by the First Signer and Second Signer*

168.    The Second Signer receives the request to sign the document via email or a notification within the eSignature Product. Upon reviewing the document, the Second Signer sees that the document contains the signature of the First Signer, indicating that the First Signer has apparently already signed the document. As mentioned previously, this is a common industry practice and the Second Signer would not be prompted to suspect any foul play.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: 11BAA540-1B83-4373-8DD2-0DF6592B8E2D

**PURCHASE ORDER**

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.: 64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority<br>mail ☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 500.00 | $ 25,000.00 |
| Monitor | 100 | $ 300.00 | $ 30,000.00 |
| Laptop charger | 25 | $ 75.00 | $ 1,875.00 |
| Laptop Warranty | 50 | $ 50.00 | $ 2,500.00 |
| | | $ | $ |

| | | | |
|---|---|---|---|
| Subtotal | | | $ 59,375.00 |
| Sales Tax | @ 9.5 % | | $ 5,640.63 |
| Shipping | | | $ 5937.50 |
| Other | | | $ |
| Discount | @ 5.0 % | | ($ 2,968.75) |
| Amount Payable | | | $ 73,921.88 |

DocuSigned by:

*John Public*

BA054A016BE5AE4

Authorized by

11/5/2021

Date

[Sign ↓]

Accepted by

[Date Signed]

Date

PurchaseOrder-Public_edited.docx

1 of 1

169.  The Second Signer is presented an interactive button to add their own signature element.

170.    The Second Signer selects the button, selects their appropriate signature style, and adds their signature element to the document.

*l.    Originator and Second Signer Receive Modified Document with Signature of First Signer and Second Signer and Certificate of Completion via eSignature Product*

171.    Once the Second Signer finalizes their signature, the Originator and Second Signer each receive an email indicating that the document has been finalized. The Originator and Second Signer can each download the PDF of the final document which includes the signature image of the First Signer and the Second Signer, as well as the Certificate of Completion. The Certificate of Completion is by default provided as a second document separate from the final document and is not, for example, appended to the final document. The Certificate of Completion shows the signature of the Second Signer and information corresponding to that signature. ***The First Signer***

***will not be notified that the modified document has been finalized or downloaded by default, as***

110

**_they are not made a party to the (modified and re-uploaded) document by the Originator when_**

**_the Originator requested the Second Signer to sign the document_**. The First Signer would only

be notified if the Originator requests it.

172.    The final (modified) PDF contains many of the same security and audit trail

features as those contained in the (unmodified) PDF that was signed only by the First Signer. In

particular, the same banner appears, with the following (or substantially the same, depending on

the PDF reader) language: "This document is signed. All signatures are valid." The banner also

includes the same "Signatures Panel" button, which displays a signature panel for review. The

Signatures Panel does not differentiate between the signature of the First Signer or the Second

Signer. To the average reviewer, including third-party reviewers, the banner assures them that

both signatures shown in the document are valid. The natural conclusion is that the document

itself must be valid and executed by both the First Signer and the Second Signer with the intent

to sign the same document.[48]

*See image on following page.*

---

[48] Because the Originator created a new Envelope when they re-uploaded the (modified) document and requested the Second Signer's signature, the DocuSign Envelope ID will differ between the (unmodified) PDF signed by only the First Signer and the (modified) PDF ostensibly signed by both the First Signer and the Second Signer. However, under Scenario 1, this change in the Envelop ID would not alert a reviewer to anything amiss because the Originator's process of acquiring signatures sequentially would require a new Envelop ID to be generated in-between the First Signer's signature and the Second Signer's signature no matter what, even in a routine (non-exploitive) situation where the Originator did not modify the document in-between signatures. In other words, the Envelope ID would be expected to change regardless of whether the Originator performed the Security Exploit or did everything above board.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS



173.    On close inspection, the Certificate of Completion only shows the signature of the Second Signer and only includes information corresponding to that signature. However, there is no indication that any other signatures in the document are invalid or otherwise untrustworthy. No feature of the eSignature product will alert the reviewer to the fact that the document has been modified between the First Signer's signature and the Second Signer's signature, that the First Signer's signature was reused, or the fact that the First Signer did not affix his or her signature to the modified document will not be apparent to the average reviewer.

112

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS



2. *Scenario 2: Signatures Acquired in Parallel*

174.    The Signatures Acquired in Parallel scenario involves using the eSignature Product to solicit signatures from multiple parties simultaneously, based on the common industry practice of two or more parties meeting together to execute a document at the same time. Under such a scenario, an agent of a company will typically solicit signatures via the DocuSign product from all parties simultaneously, with the expectation that the parties will only receive a signed copy of the document after each has signed. Once the signatures have been obtained, the document is either delivered to the parties via the DocuSign Platform or sent to the agent to distribute. For

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

ease of illustration, the example in this scenario will involve two signers: the First Signer and the

Second Signer.

175.    Many of the steps in this scenario overlap with the steps described in the prior

scenario. Description of these steps will not be repeated, and only differences will be addressed.

*See image on following page.*

114



**Signatures Acquired in Parallel**

1. Originator prepares document for signature
2. Originator uploads document into DocuSign
3. Originator enters information for First Signer and Second Signer
4. Originator requests signature from First Signer and Second Signer via DocuSign
5. First Signer signs document via DocuSign
6. Second Signer signs document via DocuSign
7. Originator, First Signer, and Second Signer receive document with signature of First Signer and Second Signer and Certificate of Completion via eSignature product
8. First (or Second) Signer downloads PDF of document
9. First (or Second) Signer converts PDF into modifiable format (e.g. Word), retaining signature image of other signer
10. First (or Second) Signer modifies document retaining signature of First Signer
11. First (or Second) Signer uploads modified document with signature of First Signer appearing in the modified document
12. First (or Second) Signer self-signs document via DocuSign, and the modified document now appears to be signed by First Signer and Second Signer
13. First (or Second) Signer receives modified document with signature of First Signer and Second Signer and Certificate of Completion via eSignature product
14. The PDF of the modified document, appearing to be signed by the First Signer and the Second Signer, includes, among other security features, a banner with the following (or substantially similar) language: "This document is signed. All signatures are valid."

> *a. Originator Prepares Document for Signature Outside of eSignature Product*

176.    This step is unchanged from Scenario 1.

> *b. Originator Uploads Document into eSignature Product*

177.    This step is unchanged from Scenario 1.

> *c. Originator Enters Information for First Signer and Second Signer via eSignature Product*

178.    As in Scenario 1, the Originator uses the eSignature Product user interface to enter the name and email address of the First Signer and Second Signer.



COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

179.    The Originator also designs the document by selecting and placing anchors for the signature and date elements, as well as other information which may be automatically populated by the eSignature Product when each party signs the document. In the example below, the blue anchors correspond to the First Signer and the yellow anchors correspond to the Second Signer.

*See image on following page.*

117

# PURCHASE ORDER

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.:  64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $  1,250.00 |
| | | $ | $ |
| | | $ | $ |

| | | |
|---|---|---|
| Subtotal | | $ 48,750.00 |
| Sales Tax | @ 9.5 % | $  4,631.25 |
| Shipping | | $  4,870.00 |
| Other | | $ |
| Discount | @ 5.0 % | ($  2,437.50) |
| **Amount Payable** | | $ 55,813.75 |





Authorized by                              Date

Accepted by                                Date

118

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

        *d.  Originator Requests Signature from First Signer and Second Signer via eSignature Product*

180.    Once the Originator has finished designing the document, using the provided tools within the eSignature Product, the Originator initializes a request to the First Signer and Second Signer to sign the document. As described in the prior scenario, the First Signer and Second Signer will each receive an email instructing them to review the document.

        *e.  First Signer and Second Signer Sign Document via eSignature Product*

181.    Regardless of order, the First Signer and Second Signer each independently sign the document via the eSignature Product, using processes similar to those described in the prior scenario. In some variants, the order of the signers can be specified, but that is immaterial to this scenario.

        *f.  Originator, First Signer, and Second Signer Receive Copy of Document Signed by First Signer and Second Signer, Along with Certificate of Completion*

182.    Once the First Signer and Second Signer finish signing the document, the Originator, First Signer, and Second Signer each receive a follow-up email informing them that the document has been fully signed. The email invites each party to download their own copy of the signed document.

        *g.  First (or Second) Signer Downloads PDF of Document from eSignature Product*

183.    Using either the access link provided by the email or the appropriate section of the eSignature Product accessed via their account, the First Signer[49] downloads the signed PDF of the document. As in the prior scenario, the document includes signature elements, in this case corresponding to both the First Signer and the Second Signer. The signed PDF includes the same

---

[49] It is immaterial if the actions described in the following steps are taken by the First or Second Signer.

119

Signatures Panel and banner informing the reviewer that: "This document is signed. All signatures are valid." The Signatures Panel does not differentiate between the signature of the First Signer or the Second Signer.



184.    If the First Signer has elected to download the Certificate of Completion, which is provided by the eSignature Product as a separate document and is not appended to the signed document by default, the First Signer can review this page. Unlike the Signatures Panel, the

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

Certificate of Completion does differentiate between the signature of the First Signer and the signature of the Second Signer. In particular, it includes differing information for the "Signer Events" associated with each signature. The Signatures Panel and banner remain unchanged.



121

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

> h. *First (or Second) Signer Converts PDF into Editable Format (e.g., Microsoft Word) Outside of eSignature Product, Retaining Image of Signature of Other Signer*

185.    As described in the prior scenario, the First Signer converts the downloaded PDF document to an editable format (*e.g.*, Microsoft Word) outside of the eSignature Product, using commonly available software.

> i. *First (or Second) Signer Modifies Document Outside of eSignature Product Retaining Signature Image of First Signer*

186.    ***After the document is converted, images of the signature elements for both the First Signer and the Second Signer are preserved***. The First Signer can delete the image (and other inserted values, such as the date and time of signature) of their own signature. This leaves only the image of the signature element of the other party, the Second Signer. The First Signer can also modify the terms of the document. In this simple example, the First Signer (the customer in the Public PO) has added a no-cost warranty to the bill of goods.


*See image on following page.*

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: DBD555DE-B2E5-4EDE-B49C-D3EB95F37111

# **PURCHASE ORDER**

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.: 64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $ 1,250.00 |
| Laptop Warranty | 50 | $ 0.00 | $ 0.00 |
| | | $ | $ |

| | | | |
|---|---|---|---|
| **Subtotal** | | | $ 48,750.00 |
| **Sales Tax** | @ 9.5 % | | $ 4,631.25 |
| **Shipping** | | | $ 4,870.00 |
| **Other** | | | $ |
| **Discount** | @ 5.0 % | | ($ 2,437.50) |
| **Amount Payable** | | | $ 55,813.75 |

_____
Authorized by

_____
Date

DocuSigned by:
*Alice Fairfield*
A05300EB96B8441...
_____
Accepted by

11/9/2021
_____
Date

> *j.  First (or Second) Signer Uploads Modified Document into eSignature Product with Signature Image of First Signer Appearing in Modified Document*

187.    This step is unchanged from the prior scenario.

> *k.  First (or Second) Signer Self-Signs Modified Document via eSignature Product, and the Modified Document Now Appears to be Signed by First Signer and Second Signer*

188.    After uploading the modified document into the eSignature Product, the First Signer uses tools within the platform to re-add their own signature element to the modified document, ***while preserving the image of the Second Signer's signature element***. These tools include the same mechanisms described above for placing the anchor for the signature element and for initiating the signature request. Additionally, if the First Signer is using their own DocuSign account to initiate the signature, they can use an "I'm the only signer" feature, which ***avoids sending additional emails to other parties and allows the First Signer to simply add their signature element where needed***.



189.    The signature element of the Second Signer is undisturbed throughout the upload and signing process.

*See image on following page.*

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

DocuSign Envelope ID: DBD555DE-B2E5-4EDE-B49C-D3EB95F37111

# **PURCHASE ORDER**

**Customer:**
John Q. Public
(555) 555-1234

Date 11/5/2021
Purchase Order No.: 64854
Account/Customer ID No.: 258

**Company:**
Fairfield & Co.
(800) 555-4321

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| (Check one)<br>☐ First class mail<br>☒ Priority mail<br>☐ Other: | | 4/5/2021 |

| Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Laptop | 50 | $ 450.00 | $ 22,500.00 |
| Monitor | 100 | $ 250.00 | $ 25,000.00 |
| Laptop charger | 25 | $ 50.00 | $ 1,250.00 |
| Laptop Warranty | 50 | $ 0.00 | $ 0.00 |
| | | $ | $ |

| | | | |
|---|---|---|---|
| **Subtotal** | | | $ 48,750.00 |
| **Sales Tax** | @ 9.5 % | | $ 4,631.25 |
| **Shipping** | | | $ 4,870.00 |
| **Other** | | | $ |
| **Discount** | @ 5.0 % | | ($ 2,437.50) |
| **Amount Payable** | | | $ 55,813.75 |

Sign ↓

Date Signed

_____
Authorized by

Date

_____
*Alice Fairfield*
A05300EB9B53441...
Accepted by

11/9/2021

Date

125

*l. First (or Second) Signer Receives Final Modified Document with Signature of First Signer and Second Signer and Certificate of Completion via eSignature Product*

190. After the First Signer adds their signature element to the modified document, they can download the final (modified) PDF, as well as the Certificate of Completion, via the eSignature Product.[50]

191. To the average reviewer, this modified PDF appears to be equally valid when compared to the PDF provided by the eSignature Product after the First Signer and Second Signer first signed the document.

192. Both signed PDFs include the Signatures Panel indicating "Signature is Valid."

193. Both signed PDFs include the same banner advising the reviewer that: "This document is signed. All signatures are valid."

194. Both signed PDFs contain apparently identical signature elements for the First Signer and the Second Signer, including the signature identifiers associated with each user.

195. The end result is that the First Signer is able to modify the document at will and generate a new document bearing the same marks of validity as the unmodified document.

196. The only apparent differences between the original document (signed through the eSignature Product by the First Signer and the Second Signer) and the modified document (signed through the eSignature Product by the First Signer only but including the signature element of the Second Signer) are the different time in the signature panel and the different DocuSign Envelope ID. Given the other indicia of validity, this will escape the attention of the average reviewer.

---

[50] It is also conceivable to have a situation where the Originator conspires with the First (or Second) Signer to perform the Security Exploit—that is, where the Originator is the one to modify the document and/or request the First (or Second) Signer to sign the modified document. In such situations, the Originator could also download the final (modified) PDF, as well as the Certificate of Completion, via the eSignature Product.

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS



197.    If the First Signer has opted to download the Certificate of Completion, they can also review this page, which includes the same types of information as the Certificate of Completion for the original document (the Second Signer, not having been alerted to the creation of another document with his/her signature, would not have access to the modified document or the Certificate of Completion through the DocuSign platform). Like Scenario 1, the "Signer

127

Events" section only shows information associated with one signer—here, the First Signer. Again, there is no indication that any other signatures in the document are invalid or otherwise untrustworthy. The fact that the document has been modified by the First Signer after both the First Signer and the Second Signer signed the original document will not be apparent to the average reviewer and the DocuSign platform would not alert the Second Signer to the fact that his/her signature had been affixed to a new document.



## V.    Defendant's FCA Violations

198.    Defendant's fraudulent conduct satisfies the elements of FCA liability: (1) a false or fraudulent claim, (2) made with scienter, (3) that was material, causing (4) the Government to pay out money. *See Daugherty*, 342 F. Supp. 3d at 423-24. To the extent this Court reads in an additional element of "but for" causation for a fraudulent inducement theory, Defendant's fraudulent conduct satisfies that element as well.

### A.    Falsity: Defendant's Misrepresentations about eSignature Product Security

199.    Defendant's representations as to its eSignature Product security and compliance with Security Standards are false or fraudulent. This includes: (1) general representations that the eSignature Product is secure; and (2) specific representations that the eSignature Product complies with Security Standards.

#### 1.    General

200.    Defendant's representations that the eSignature Product is secure, including that it is more secure than traditional paper records and handwritten signatures, are false or fraudulent. As detailed in Part IV above, the Security Exploit effectively enables anyone with basic computer skills to easily forge electronic signatures on documents and to rewrite ostensibly "finalized" documents after they have been signed in ways that will be undetectable to the average reviewer. The eSignature Product is not, for instance, as Defendant represents, "secure and compliant," "extremely safe," and capable of "ensur[ing] the integrity and reliability" of court documents. *See supra* ¶¶ 126, 129 (citations omitted). Nor does it provide "the highest levels of trust and security" or enable Government customers to "provide efficient, reliable government services." See supra ¶ 126 (citations and alterations omitted).

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

### 2. *UETA*

201.    Defendant's representations that the eSignature Product complies with the UETA are false or fraudulent. The eSignature Product does not support the UETA's purpose to give legal effect to electronic signatures.

202.    The Security Exploit does not and cannot give legal effect to electronic signatures because the electronic signature is not attributable to the signer through "***the act of the person***." Unif. Elec. Transactions Act § 9(a) (emphasis added). The OMB Electronic Signature Guidance explains that an electronic signature is "***used to indicate a person's intent to associate himself in some way*** to information or to a reason for signing (*e.g.*, agreeing to the terms of a contract, acknowledging receipt of information, etc.) with legal effect." OMB Electronic Signature Guidance at 7 (emphasis added). Linking the signatory to the record also "***ensure[s] that the signatures cannot be excised, copied, or otherwise transferred to falsify an electronic record by ordinary means***." 21 C.F.R. at § 11.70 (emphasis added); OMB Electronic Signature Guidance at 23, n.53. The Security Exploit allows a party other than the signatory to manipulate the document associated with the signatory's electronic signature image, which effectively detaches the electronic signature image from the original record the signatory intended to sign and thus renders the eSignature Product not in compliance with the UETA. Without a signatory's intent to sign or to associate with the manipulated record, the signatory's electronic signature no longer has legal effect under the UETA. The Security Exploit also violates the OMB's guidance by allowing a non-signatory party to copy or transfer the signatory's electronic signature image to a modified document through document conversion and editing tools.

203.    The eSignature Product further violates the requirements under the UETA for an electronic signature to have legal effect because there is no "***security procedure applied to determine the person to which the electronic record or electronic signature was attributable***,"

130

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

as required. Unif. Elec. Transactions Act § 9(a) (emphasis added). The security procedure is "employed for the purpose of *verifying that an electronic signature, record, or performance is that of a specific person* or for *detecting changes or errors in the information in an electronic record*." *Id.* at § 2(14) (emphasis added). Overall, the integrity of the signed record must be preserved, according to the OMB Electronic Signature Guidance. Once a party other than the signatory has manipulated a document which is associated with the signatory's electronic signature image, the eSignature Product does not include a security process that accurately identifies either to whom the electronic signature image was attributable, that the document was modified, or what portion(s) of the document were modified. There is no security warning or flag from the eSignature Product that the pre-existing electronic signature image(s) may have been generated in connection with a different version of the document, nor is there any capability within the audit trail of the final, modified document to determine when, or in connection with which version of the document, the pre-existing electronic signature image(s) were generated or to determine what terms within the document were modified between the different document versions. In fact, the final document with all signatures represents that "All signatures all valid," even if one or more signature images were generated in connection with a different version of the document. Thus, the integrity of the document is not preserved.

### 3. *ESIGN Act*

204.    Defendant's representations that the eSignature Product complies with the ESIGN Act are false or fraudulent. Similar to the eSignature Product's non-compliance with the UETA, the product fails to comply with the ESIGN Act by denying legal effect to an electronic signature. The ESIGN Act requires that an electronic signature be "*logically associated* with a contract or other record and executed or adopted by a person *with the intent to sign the record*." 15 U.S.C. § 7006(5) (emphasis added). Because the Security Exploit allows a party besides the signatory to

131

manipulate a document with the original signatory's electronic signature image still associated, both logical association and intent are destroyed, as the modified document is not consistent with the terms to which the signatory agreed. Without logical association or intent, there cannot be a valid electronic signature with legal effect.

### 4. *Part 11 Regulations*

205. Defendant's representations that the eSignature Product complies with the Part 11 Regulations are false or fraudulent. The Part 11 Regulations specifically prohibit the actions the Security Exploit allows. The regulations require that electronic signatures "***shall be linked to their respective electronic records to ensure that the signatures cannot be excised, copied, or otherwise transferred to falsify an electronic record by ordinary means***." 21 C.F.R. at § 11.70 (emphasis added). The Security Exploit violates this requirement because one signer's electronic signature image can be transferred from one document to a different document or document version by another party through commonly available document conversion and editing tools.

206. The Security Exploit further violates the Part 11 Regulations that require accuracy of electronic records and the ability to discern valid or altered records. *See id.* at § 11.10(a). The eSignature Product has no means to identify whether a document with an electronic signature image affixed has been modified or altered. There is no security warning or flag from the eSignature Product that the pre-existing signature image(s) may have been generated in connection with a different version of the document, and once a party signs, the resulting document represents that "All signatures all valid," even if one or more electronic signature images were generated in connection with a different version of the document.

207. Additionally, the Part 11 Regulations require an audit trail that details the date and time of document creation, modification, or deletion. *See id.* at § 11.10(e). The eSignature Product does not have the capability within the audit trail of the final, modified document to determine

when, or in connection with which versions of the document, the pre-existing signature images were generated. The electronic signature image could, but does not, incorporate the document's Envelope ID, which would link a particular signature to a particular version of the document. Thus, the product does not comply with the regulatory requirement for an audit trail detailing when any modifications were made.

208.    The eSignature Product also fails to meet the requirements of the Part 11 Regulations that require electronic signatures to be "unique to one individual and . . . *not be reused by, or reassigned to, anyone else*" and "used *only by their genuine owners*." *Id.* at § § 11.100(a), 11.200(a)(2) (emphasis added). The Security Exploit allows a party other than the signatory to use the signatory's electronic signature image on a modified document, thereby reusing the signature on a different document by someone other than the genuine owner.

209.    Lastly, the eSignature Product violates the Part 11 Regulations' requirement that electronic signatures be "administered and executed to *ensure that attempted use of an individual's electronic signature by anyone other than its genuine owner requires collaboration of two or more individuals*." *Id.* at § 11.200(a)(3) (emphasis added). The Security Exploit allows a single individual, without any collaboration from another, to use the electronic signature image of the signatory on a modified document through simple document conversion and editing tools.

### 5.  *EU eIDAS*

210.    Defendant's representations that the eSignature Product complies with the EU eIDAS are false or fraudulent. The eSignature Product violates each of the three types of signature standards under the eIDAS.

211.    The first type, electronic signatures, are defined as "data in electronic form which is *attached to or logically associated with* other data in electronic form and which is *used by the signatory* to sign." Commission Regulation 910/2014, 2014 O.J. (L 257) 73, 84 (EU) (emphasis

added). The eSignature Product's electronic signatures fail to meet this definition because, as elaborated for the UETA and ESIGN Act above, the Security Exploit severs any attachment or logical association between an electronic signature image and the original record a signatory intended to sign. It also means that the electronic signature image can be used by more than just the signatory to sign documents.

212. The second type, advanced electronic signatures, have more stringent requirements, including "uniquely link[ing]" the electronic signature image to the signatory to be used under the signatory's "sole control," as well as being capable of detecting any subsequent changes in the data associated with the electronic signature image. *Id.* at 100. The eSignature Product fails to meet these requirements because the signatory's signature is not uniquely linked to the signature under their sole control, as another party can use the signature on another document. Further, the eSignature Product does not include a document ID as part of the electronic signature image and does not have an audit trail capable of detecting any modifications to a document after the signatory has signed.

213. The third type, qualified electronic signatures, incorporate the requirements of an advanced electronic signature and, in addition, require the use of a qualified electronic signature creation device. The qualified electronic signature creation device is intended to protect an electronic signature against forgery and use by others. *Id.* at 84. Because of the Security Exploit, the eSignature project does not meet this requirement because it allows a party other than the signatory to copy and use the signatory's signature.

### B. Knowledge: Defendant's Misrepresentations are Knowing

214. On information and belief, Defendant has had actual knowledge, or at minimum has been deliberately or recklessly ignorant, of the existence of Security Exploit. Therefore, Defendant made knowing misrepresentations that the eSignature Product: (1) is secure, including

that it is more secure than traditional paper records and handwritten signatures; and (2) complies with Security Standards. Defendant made such representations in knowing disregard "of the truth or falsity of the information," in violation of the FCA. 31 U.S.C. § 3729(b)(1)(A).

215. As a non-insider (*e.g.*, not a current or former employee, agent, or co-conspirator of Defendant), Relator does not have access to information that would allow Relator to determine if there has been an intentional or actual knowing scheme to defraud the Government by Defendant, or if Defendant's fraudulent course of conduct is instead the result of deliberate ignorance or recklessness. Such information is "peculiarly within the [Defendant's] knowledge." *See United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81-82 (2d Cir. 2017). In such circumstances, despite Federal Rule of Civil Procedure 9(b)'s "generally rigid requirement" for pleading fraud, allegations "may be based on information and belief" if the complaint offers "specific facts supporting a strong inference of fraud." *Id.*; *see also United States v. Vandewater Int'l Inc.*, No. 2:17-CV-04393-RGK-KS, 2019 WL 6917927, at *2 (C.D. Cal. Sept. 3, 2019) (with non-insider Relators, "the pleading requirements of [Federal Rule of Civil Procedure] 9(b) may be to some extent relaxed . . .") (citations omitted); *United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704, 2009 WL 1456582, at *8 (E.D.N.Y. May 22, 2009) ("Some courts relax Rule 9(b) in fraud cases where much of the factual information needed to fill out a plaintiff's complaint lies peculiarly within the opposing party's knowledge."). The showing of a strong inference of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (citations omitted).

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

216.    Defendant had both motive and opportunity to commit fraud. On information and belief, Defendant had a strong motive to both: (1) remain deliberately or recklessly ignorant of the existence of the Security Exploit; and (2) avoid disclosing the existence of the Security Exploit to the Government or the public to the extent Defendant had actual knowledge of its existence. Detecting and disclosing the Security Exploit would be a public relations nightmare for Defendant, who aggressively markets its eSignature Product as a highly secure, safe, and reliable alternative to traditional ink-and-pen signatures. Detecting and disclosing the Security Exploit would also be inconsistent with DocuSign's representations that the eSignature Product is secure and compliant with the Security Standards.  Public knowledge of the Security Exploit would attract negative media attention and would likely harm DocuSign's stock prices and cause both Government and non-Government customers to cancel their subscriptions in favor of one of Defendant's many competitors.

217.    On information and belief, in addition to motive, Defendant had ample opportunity to commit fraud in connection with every Government contract it entered into and every claim submitted to the Government for payment.

218.    There is also strong circumstantial evidence of conscious misbehavior or recklessness by Defendant. On information and belief, reasonable due diligence by Defendant should have uncovered and made Defendant aware of the existence of the Security Exploit. If a non-insider user of Defendant's eSignature Product, such as Relator, could uncover such a basic and profound security flaw, it defies belief to think that Defendant did not know or should not reasonably be expected to have known of the existence of the Security Exploit.

219.    Moreover, on information and belief, some of Defendant's competitors appear to be aware of, and to have taken steps to address, similar potential issues with their own products.

For example, Relator's attempts to replicate the Security Exploit using comparable electronic signature software from Defendant's competitors Adobe Sign, Authentisign, and Hello Sign result in security banners and signature panels on altered documents with text that would alert the average reviewer to something amiss—*e.g.*, that there are problems with one or more signatures and/or that the validity of one or more signatures cannot be confirmed. These security banners tend to state the following (or substantially similar language):

Authentisign: "This document is signed. At least one signature has problems."

> ⓘ This document is signed. At least one signature has problems.

AdobeSign: "The validity of the document certification is UNKNOWN."

> The validity of the document certification is UNKNOWN.

Hello Sign: "This document is signed. At least one signature has problems."

> ⓘ This document is signed. At least one signature has problems.

220.    The signature panels associated with the PDFs of documents produced by these competitors further include indications that something is amiss:

Authentisign: "Signature validity is unknown."

> Signatures
> ⊟ 🎗 Certified by
>         No changes are allowed
>     ⊟ 🔏 Rev. 1: Signed by Lone Wolf Technologies, Inc
>         ⊞    Signature validity is unknown

AdobeSign: "Signature not yet verified":

> Signature not yet verified
> ⌄ Signature Details
>     Reason: Agreement certified by Adobe Acrobat Sign
>     Certificate Details...

137

Hello Sign: "Signature validity is unknown."

```
Signatures
☐ 🖉? Rev. 1: Signed by HelloSign Platform
   ☐    Signature validity is unknown
              Document has not been modified since this signature was applied
```

221.    Therefore, these competitor products do not appear to be similarly vulnerable to the Security Exploit. This adds to the strong circumstantial evidence that DocuSign's fraudulent conduct is knowing.

222.    Further, in addition to failing to alert reviewers that a signature might have problems or unknown validity, Defendant's use of plural text in the security banner, stating "This document is signed. All signatures are valid" even in circumstances where only one party has signed the current version of a document, is knowing and misleading, as it fails to convey important information about whether a document has been signed by only one person or by more than one person.

223.    Similarly, Defendant's use of singular text in the Signatures Panel, stating "signature is valid" whether there is one signer or more than one signer, is knowing and misleading as it fails to convey important information about whether a document has been signed by only one person or by more than one person.

C.  Materiality and Payment: Defendant's Misrepresentations Materially Influence the Government's Decision to Pay

224.    On information and belief, Defendant's misrepresentations are material as they have "a natural tendency to influence, or be capable of influencing, the payment" of money by the Government to Defendant for use of the eSignature Product and related products and services. 31 U.S.C. at § 3729(b)(4). Defendant's misrepresentations are also a "but for" cause of the Government's payment decisions because the Government would not have purchased the

eSignature Product or related products and services "but for" Defendant's false and fraudulent misrepresentations about the eSignature Product's security. *See United States ex rel. Cimino v. Int'l Bus. Machs. Corp.*, 3 F.4th 412, 421-22 (D.C. Cir. 2021).

225.    Defendant's misrepresentations about eSignature product security are not "minor or insubstantial." *See Strock*, 982 F.3d at 65 (citations omitted). Rather, they go "to the very essence of the bargain." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 116 (2d Cir. 2021), *cert. denied sub nom. U.S. ex rel. Foreman v. AECOM*, No. 21-1314, 2022 WL 1295727 (U.S. May 2, 2022) (citation omitted). Indeed, the security and integrity of electronic signatures and records, including protections against signature forgery and unauthorized document alteration, are at the "heart of the purpose of the statutory and regulatory regime" represented by the UETA, ESIGN Act, Part 11 Regulations, and EU eIDAS. *See id.* (citations and quotations omitted). The purpose of these Security Standards includes to "promote public confidence in the validity, integrity and reliability of electronic commerce and government transactions." Unif. Elec. Transactions Act § 6, cmt. 1(f). Defendant's misrepresentations about compliance with these Security Standards "go to the heart of the bargain, such that any regulatory, statutory, or contractual violations would likely affect the Government's payment decision." *Foreman*, 19 F.4th at 116 (citations and quotations omitted).

226.    As detailed above, Defendant aggressively markets its eSignature Product to Government customers and potential customers as secure and compliant with Security Standards, as well as being a product that can help Federal executive Government agencies comply with the 21st Century IDEA Act. The purported security of the product is one of its central and essential features. On information and belief, the Government would not purchase or otherwise utilize the eSignature Product or related products and services if the Government knew that the product was

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

vulnerable to the Security Exploit and, therefore, not secure and not compliant with material contract terms and Security Standards. Nor would the Government purchase or otherwise utilize a product that it knew was vulnerable to a critical security flaw which could undermine the integrity of all Government records executed through the product.

227.    On information and belief, the Government had no prior knowledge of the existence of the Security Exploit prior to the submission of the written disclosure statement required by Section 3730(b)(2) of the FCA and the filing of this complaint. *See* 31 U.S.C. § 3730(b)(2).

D.  FCA Liability

228.    On information and belief, because Defendant has charged and continues to charge (or cause third-party vendors to charge) the Government for a product that it knows is defective and non-compliant with material contract terms (express or implied) and Security Standards, each bill, invoice, or other claim for payment or approval of the eSignature Product and related products and services presented or caused to be presented by Defendant to the Government is a false or fraudulent claim under FCA Section 3729(a)(1)(A). Such claims are false or fraudulent regardless of whether there is evidence that the Security Exploit has been used in any particular instance(s).

229.    On information and belief, Defendant's knowing misrepresentations (explicit or implicit) that the eSignature Product is secure and compliant with material contract terms (express or implied) and Security Standards are false statements material to false or fraudulent claims under FCA Section 3729(a)(1)(B). In addition, all contracts, agreements, or other records between Defendant (or a third-party vendor) and the Government regarding purchase or other payments for use of the eSignature Product and related products and services are false records material to false or fraudulent claims under FCA Section 3729(a)(1)(B).

230. On information and belief, Defendant is liable for its fraudulent conduct under at least the following theories:

a. **Express False Certification (Legal Falsity):** On information and belief, Defendant has knowingly made explicit false statements to the Government that the eSignature Product complies with material contract terms and Security Standards, and these express misrepresentations were material to the Government's payment decision. *See Foreman*, 19 F.4th at 104 n.7 ("An express false certification occurs when a claimant explicitly represents that he or she has complied with a contractual condition, but in fact has not complied.") (citations omitted).

b. **Fraudulent Inducement:** On information and belief, Defendant fraudulently procured contracts with the Government and is therefore liable for each claim (including each individual bill, invoice, or other claim for payment or approval) submitted to the Government pursuant to such fraudulent contracts. *See Strock*, 982 F.3d at 60 ("FCA liability attaches . . . because the contract under which payment [is] made is procured by fraud.") (citations and quotations omitted). Defendant made "fraudulent statements to the government" about the security of the eSignature Product, which "induced the government to enter into some form of contract with the defendant." *See United States ex rel. Lacey v. Visiting Nurse Serv. of New York*, No. 14-CV-5739, 2017 WL 5515860, at *6 (S.D.N.Y. Sept. 26, 2017) (citation omitted). The Government would not have entered into the contracts with Defendant "but for" Defendant's fraudulent misrepresentations (express or implied) about eSignature Product security. *See Cimino*, 3 F.4th at 421-22.

c. **Implied False Certification (Legal Falsity):** On information and belief, Defendant has knowingly made "specific representations" about the security of the eSignature Product to the Government but "fail[ed] to disclose noncompliance with material statutory, regulatory, or contractual requirements," which "makes those representations misleading half-truths." *See Foreman*, 19 F.4th at 105 (citations omitted); *see also Escobar*, 579 U.S. at 187-90 and n.2 (holding that implied false certification can be a basis for FCA liability because "common-law fraud has long encompassed certain misrepresentations by omission . . ."). These misrepresentations by omission were material to the Government's payment decision.

d. **Defective Products or Services:** On information and belief, Defendant has delivered to the Government as part of a fraudulent and knowing course of conduct a "substandard" eSignature Product that does not conform to material contractual terms (express or implied) or Security Standards because it is not secure, a central and essential feature of the product. *See Polansky,* 2009 WL 1456582, at *8 (recognizing that FCA actions have been sustained under a theory of "supplying substandard products or services").

e. **Worthless Products or Services:** On information and belief, Defendant has delivered to the Government as part of a fraudulent and knowing course of conduct

an eSignature Product that is "worthless" and effectively has "no . . . value" because it is not secure, a central and essential feature of the product. *See Mikes v. Straus*, 274 F.3d 687, 702-04 (2d Cir. 2001), *abrogated on other grounds by Escobar*, 579 U.S. at 176 (recognizing a "worthless services" claim as a distinct claim under the FCA).

f. **Literal False Certification (Factual Falsity):** On information and belief, Defendant has presented the Government with "an incorrect description of the goods and services provided or a request for reimbursement for goods and services never provided" because the eSignature Product it sold to the Government is not secure, a central and essential feature of the product. *See United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 699 (S.D.N.Y. 2018) (citations omitted).

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

## COUNT I (Federal False Claims Act)

## 31 U.S.C. § 3729(a)(1)(A), § 3729(a)(1)(B)

231.   Relator realleges and incorporates by reference each of the statements and allegations set forth above.

232.   Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly presented or caused to be presented to an officer, employee, or agent of the United States false or fraudulent claims for payment or approval from the United States in violation of 31 U.S.C. § 3729(a)(1)(A). The United States, unaware of their falsity, relied on these claims, which were material to the United States' decision to pay money to Defendant.

233.   Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly made or caused to be made false records and statements material to false or fraudulent claims that were presented to an officer, employee, or agent of the United States for payment or approval from the United States in violation of 31 U.S.C. § 3729(a)(1)(B). The United States, unaware of their falsity, relied on these records and statements, which were material to the United States' decision to pay money to Defendant.

234.   Because of Defendant's acts, the United States has sustained and continues to sustain damages in an amount to be determined at trial. The United States is also entitled to statutory penalties.

## COUNT II (California False Claims Act)

## Cal. Gov. Code § 12651(a)(1), § 12651(a)(2)

235.   Relator realleges and incorporates by reference each of the statements and allegations set forth above.

143

236.    Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly presented or caused to be presented to an officer, employee, or agent of the State of California or of a political subdivision, false or fraudulent claims for payment or approval by the State of California, in violation of California Gov. Code § 12651(a)(1) (providing liability for any person who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval"). The State of California, unaware of their falsity, relied on these claims, which were material to the State of California's decision to pay money to Defendant.

237.    Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly made, used, or caused to be made or used false records and statements material to false or fraudulent claims that were presented to an officer, employee, or agent of the State of California or of a political subdivision for payment or approval by the State of California, in violation of California Gov. Code § 12651(a)(2) (providing liability for any person who "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim"). The State of California, unaware of their falsity, relied on these records and statements, which were material to the State of California's decision to pay money to Defendant.

238.    Because of Defendant's acts, the State of California has sustained and continues to sustain damages in an amount to be determined at trial. The State of California is also entitled to statutory penalties.

### COUNT III (Florida False Claims Act)

### F.S.A. § 68.082(2)(a), § 68.082(2)(b)

239.    Relator realleges and incorporates by reference each of the statements and allegations set forth above.

144

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

240. Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly presented or caused to be presented to an officer, employee, or agent of the State of Florida false or fraudulent claims for payment or approval by the State of Florida, in violation of Florida Statute 68.082(2)(a) (providing liability for any person who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval"). The State of Florida, unaware of their falsity, relied on these claims, which were material to the State of Florida's decision to pay money to Defendant.

241. Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly made, used, or caused to be made or used false records and statements material to false or fraudulent claims that were presented to an officer, employee, or agent of the State of Florida for payment or approval by the State of Florida, in violation of Florida Statute 68.082(2)(b) (providing liability for any person who "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim"). The State of Florida, unaware of their falsity, relied on these records and statements, which were material to the State of Florida's decision to pay money to Defendant.

242. Because of Defendant's acts, the State of Florida has sustained and continues to sustain damages in an amount to be determined at trial. The State of Florida is also entitled to statutory penalties.

### COUNT IV (New York False Claims Act)

### N.Y. State Fin. Law § 189(1)(a), § 189(1)(b)

243. Relator realleges and incorporates by reference each of the statements and allegations set forth above.

244. Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly presented or caused to be presented to an

officer, employee, or agent of the State of New York false or fraudulent claims for payment or approval by the State of New York, in violation of New York State Finance Law § 189(1)(a) (providing liability for any person who "knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval"). The State of New York, unaware of their falsity, relied on these claims, which were material to the State of New York's decision to pay money to Defendant.

245.    Through the acts alleged in this Complaint, Defendant DocuSign, through its employees, agents, and/or co-conspirators, knowingly made, used, or caused to be made or used false records and statements material to false or fraudulent claims that were presented to an officer, employee, or agent of the State of New York for payment or approval by the State of New York, in violation of New York State Finance Law § 189(1)(b) (providing liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"). The State of New York, unaware of their falsity, relied on these records and statements, which were material to the State of New York's decision to pay money to Defendant.

246.    Because of Defendant's acts, the State of New York has sustained and continues to sustain damages in an amount to be determined at trial. The State of New York is also entitled to statutory penalties.

### PRAYER FOR RELIEF

WHEREFORE, Relator respectfully requests that this Court enter judgment:

      A.   Awarding the Government the maximum amount allowed under 31 U.S.C. § 3729(a) and the counterpart provisions of State Plaintiff statutes;

      B.   Awarding Relator the maximum amount allowed under 31 U.S.C. § 3730(d) and the counterpart provisions of State Plaintiff statutes;

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

C. Awarding the Government and Relator all litigation costs, including attorneys' fees and expenses; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Relator Judith Silver demands a trial by jury on all issues so triable

Dated: November 10, 2022
New York, NY

Respectfully submitted,

Brendan F. Quigley
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tele: (212) 408-2520
brendan.quigley@bakerbotts.com

*Counsel for Relator Judith Silver*

147